BOARD OF TRUSTEES OF THE UPPER IOWA CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, Appellant, v. ARGEL M. NOYES, Administrator of the estate of ANN NOYES, deceased, Appellee.

Negotiable instruments: SUBSCRIPTIONS: CONSIDERATION. Where a note was given to aid in raising an endowment fund for the benefit of a church, and it was used as an inducement to others to subscribe to the fund, such use of the note, together with the benefits received by the maker, constituted a sufficient consideration for the same.

**Appeal:** CAPACITY TO SUE: REVIEW. Where no issue was raised as to the capacity of the trustees of a church to sue upon a subscription note, the objection that plaintiff's capacity to sue was not proved will not be considered on appeal.

*Appeal from Dubuque District Court.*—HON. ROBERT BON-SON, Judge.

TUESDAY, APRIL 14, 1914.

ACTION on a promissory note for the sum of $500, dated March 6, 1891, and due on or before thirty years from date. It is signed by Ann Noyes, and provides that it was for the Conference Endowment fund. The administrator pleaded that the note was without consideration, and the claim was also denied. The case was tried to the court, and the note was disallowed. Plaintiff appeals.—*Reversed.*

*S. B. Lattner* and *E. E. Bowen,* and *John N. Hughes,* for appellant.

*Matthews & Chalmers* and *William Graham,* for appellee.

DEEMER, J.—The note which is the basis of plaintiff's claim, reads as follows:

Conference Claimant Fund Upper Iowa Conference, Methodist Episcopal Church.

$500.00    Dubuque, Iowa, March 6, 1911.

On or before thirty years after date for value received I promise to pay the Board of Trustees of the Upper Iowa Conference of the Methodist Episcopal Church the sum of five hundred dollars without interest.

In case of my death prior to the expiration of the said thirty years, then and in that case this note shall become due and collectible at the date of my death.

This five hundred dollars is for the Confer-Endowment Fund.          Ann Noyes.

P. O. Dubuque, Ia.

The note is presumed to have been based upon a consideration, and the burden was on the defendant to negative that fact. In truth, there is little or no dispute in the testimony. The party who took the note was a minister, representing the Methodist Episcopal Church, and was in the field for the purpose of getting contributions, and he testified as follows, without objection:

I was present when this claimant's Exhibit No. 1 was signed. I knew Ann Noyes the day I was there. Her pastor, Mr. Piper, introduced me to Mrs. Noyes, and he was present when the note was signed. I was employed by the Board of Trustees of the Upper Iowa Conference of the Methodist Episcopal Church to secure this fund. We were to secure $35,000. We started our condition on the whole amount being secured by a given date. One of the conditions was that there were fifty members of the said conference that were giving $100 apiece, and we were to secure as binding on the members of the conference, fifty, or they were not bound. We were to secure in all $35,000. Of this $10,000 was to be in $1,000 subscriptions, or pledges, $5,000 in $500 subscriptions, which would make ten, and $15,000 in $100 subscriptions, of which we expected to get fifty, some members of the conference and the rest of the sum, $5,000, in various sums. This was explained to Mrs. Noyes at the time this note was signed. I stated it distinctly to Mrs. Noyes as I stated it, I think, to everybody that I saw, that the conference had undertaken to raise $35,000 conditioned, and I said, 'Now, Mrs. Noyes, it may be that this subscription which you are giving will be necessary to make that $35,000.' You see she gave an unconditional subscription. This money was raised for the support of the Upper Iowa Conference. After receiving this note, I solicited subscriptions of other people. I solicited other subscriptions for this fund in which I referred to the fact that I had obtained a subscription and note from Mrs. Ann Noyes and can name the individuals. I kept track of the subscriptions that I received. They were written down, as the subscriptions were given, signed, and conditioned on all of the subscriptions. I can give you the exact wordings of the subscriptions if you want it. I put a list of the different persons who subscribed in a book, and afterwards

I used the subscriptions in my further solicitation in this way. I said that we had to have ten $500 subscriptions at a given time in October—October 15, 1912, was the limit. And that we had to fulfill the conditions to the very letter. When the time arrived, I wrote all who had subscribed conditionally and gave them the names of those who had subscribed and the amount, and among them I gave Mrs. Noyes. In the list of those names I gave as I have testified to, the name of Mrs. Ann Noyes was included. I think I received a reply to most all of those letters. I was simply acting for the Preachers' Aid Association of the Methodist Episcopal Church. All of the subscriptions received by reason of sending this list through the mail in which I mentioned Mrs. Ann Noyes were either paid in cash or in notes. It was understood when they were taken that they could be paid by cash or notes. Q. You spoke about subscriptions being conditional. What do you mean by that? A. I mean that we started out to secure $35,000, in conditional subscriptions, the subscriptions conditioned (not all of them) on the whole amount being secured by a given time, and the subscriptions were to be as I stated: $10,000 in $1,000 subscriptions; $15,000 in $100 subscriptions, and $5,000 in various sums. Some of the parties made no conditions, and some paid the cash at the time; $1,000 of it was paid in cash or checks, but they were included in the $35,000 to help hold the $35,000, and, if we hadn't those, we could not have held the $35,000. The whole subscription was looked over by a committee of bankers. This has been handled with the greatest business care, and this note was also put in due to the fact that the conditions upon which the subscriptions had been secured have been fully met with, and therefore the subscriptions are binding, and then we immediately set out to have them paid either by cash or note. As soon as the money comes in, it is turned over immediately to the conference treasurer, who is under heavy bonds, and is guarded in every way and will be until the end. The fund has been fully raised. It had to be raised within the time. Claimant's Exhibit No. 1 comprises a part of that fund. It comprises $500 of it. The fund would be $500 short if this was not all right. If anybody else fails to pay, the fund will be short. To the best of my knowledge, I think that all those who have not paid will pay their subscriptions. Of course, I do not know though.

The case is not unusual in character, and the question presented to wit; that the subscription was entirely voluntary and without consideration, has troubled courts and text-writers from the beginning of such promises and subscriptions. The matter is not new to this court, and until the recent decision in *Brokaw v. McElroy,* 162 Iowa, 288, it was generally believed that a consideration was to be found in expenditures made on the strength of the subscriptions, or upon the mutual promises of the subscribers to the fund; the promise of one being a consideration for the promise or promises of the others. This latter case approaches the matter from a new angle, and it is there held, following some cases (generally recent ones) from other states, that:

1. NEGOTIABLE IN-
   STRUMENTS:
   subscriptions.

Such an institution as the beneficiary herein is necessarily supported by the co-operation of many people who have a common and unselfish interest in its success. Ordinarily, one man could not carry the load alone. Co-operation is usually within the contemplation of each contributor. His gift would become mere waste if it must stand alone. A contribution therefore may be in the nature of a response to a previous contribution by another, or it may be in the nature of an invitation to future contributions by others, or it may partake of the nature of both. All this may become a question of fact in a particular case. It would be manifestly unjust to permit a promisor of a contribution to withdraw his promise after it had served the function of inducing other contributors to incur obligations to the same beneficiary and for the same general purpose. We think that notes of this kind rest upon a somewhat different foundation from a note executed in a transaction, in contemplation of a pecuniary benefit to the maker or to some other person selected by him, other than the payee. Such notes are frequently, if not usually, executed, not as evidence of a promise to make a future gift, but for the specific purpose of creating a present asset for its beneficiary. A very substantial part of the assets of such institutions exist in this form. To lightly withhold judicial sanction from such obligations would be to destroy millions of assets of the most beneficent institutions in our land,

and to render such institutions helpless to carry out the purpose of their organization. Unfortunately, authorities are in conflict at this point, and some courts have applied a very narrow rule to this class of obligations. We think the trend of modern judicial opinion is in the other direction. Various phases of the question have been before this court in the following cases: *Simpson College v. Bryan,* 50 Iowa, 293; *University v. Livingston,* 65 Iowa, 202; *Presbyterian Church v. Baird,* 60 Iowa, 237; *Simpson College v. Tuttle,* 71 Iowa, 596; *Church v. Dönnell,* 110 Iowa, 5; *King v. Carroll,* 129 Iowa, 364. In all the foregoing cases save one, the sufficiency of the consideration was sustained. The exception was *Simpson College v. Tuttle,* 71 Iowa, 596. That case turned upon the correctness of a ruling on demurrer. The ruling of the trial court was sustained. To such holding, however, the following saving paragraph was added: 'To this doctrine, however, there must be added the qualification that the benefits to be derived from founding a school, church, or other institution of similar character, may furnish a good consideration for a promise. It must also be remembered, in the case before us, that such consideration is not advanced by plaintiff, and the only reference to its existence is contained in the paragraphs of the answer assailed by the demurrer; the other paragraphs setting up a total want of consideration.' The discussion in each of the above-cited cases is somewhat cautious, and is confined strictly to the particular question therein involved.

It is true that in this case expenses were incurred on the strength of the subscription which, according to practically all the authorities, constitutes a consideration; but it is nevertheless apparent that this court, in the opinion from which the quotation is made, adopts the rule of a rather small minority of the cases holding that a consideration may be found either in the mutual promises of the different subscribers; in the inducements held out by some to others, to induce them to subscribe; and also in the benefits to be derived by the subscribers because of the establishment of a church, college or other institution of charity or philanthropy.

This may be called the modern doctrine, which, so far, has not received general support in the authorities. It is the one which now obtains in Indiana, Ohio, and Minnesota,

and as applied to the instant case calls for a reversal of the judgment of the trial court.

II. There is nothing in the proposition that there is no showing of plaintiff's capacity to act, either in a corporate or other capacity. The defendant has raised no issue as to plaintiff's right to sue. The plaintiff is payee in the note, and defendant raised no issue as to its capacity to sue. Had it done so, there might be some doubt as to its right to maintain that defense. Corporate capacity is not put in issue either directly or collaterally. The promise was made to the Board of Trustees, etc., for the benefit of the Conference Endowment Fund, and, according to the testimony, the money was raised for the support of the Upper Iowa Conference of the Methodist Episcopal Church. The party who took the subscription was the agent for the church, and for the Conference, and he had full power to make the representations and promises that he did, and to bind his principal to the performance thereof. The money was subscribed conditionally, and all the conditions were performed. To allow the maker of the note or her representatives to escape would doubtless relieve the other subscribers, at least to the amount of their unpaid subscriptions.

2. Appeal: capacity to sue: review.

The decision of the lower court was rendered prior to the filing of the opinion in the *Brokaw* case, *supra,* and, although the district court doubtless followed the weight of authority, we have adopted a different rule, and it is apparent that the judgment must be, and it is—*Reversed.*

Ladd, C. J., and Gaynor and Withrow, JJ., concurring.