IN RE ESTATE OF JOHN B. LEIGH.

FIRST PRESBYTERIAN CHURCH OF MT. VERNON, Appellee, v. WILLIAM DENNIS, Executor, Appellant.

**TRIAL:** Method of Trial—Claims—Trial Without Jury. A claim, 1 whether legal or equitable, can be presented to the court in probate proceeding for allowance, and when the issues are made up, if either party claims that the case should be tried in equity, it is open to him to raise that objection, and ask to have it set down for trial without a jury.

**APPEAL AND ERROR:** Waiver Affecting Right—Mode of Trial Below. The right to make an objection that a claim in a probate 2 proceeding should be tried in equity was waived where, when the issues were made up, it was not raised, and there was no request made to have the case set down for trial without a jury.

**APPEAL AND ERROR:** Review—Presumptions—Claim in Probate— 3 Theory of Claim. Where a claim in probate was based on the theory that there was a trust, and the claim was allowed, it will be presumed that it was established on that theory.

EVIDENCE:    Relevancy, Materiality, and Competency—Declaration
4   of Trust—Consideration.   A note, taken back and exchanged for
    a declaration of trust, and the details of the transaction of
    trust, are admissible on the issue of consideration, in an action
    on a declaration of trust.

CONTRACTS:   Consideration—Maintenance Fund for Church Organ.
5   A pledge to a church of an endowment fund for the mainte-
    nance of an organ, conditioned on the promise of a gift of an
    organ, which was thereafter given, is supported by consid-
    eration.

TRUSTS:   Construction and Operation—Consideration—Declaration
6   of Trust upon Surrender of Note.   Where the pledgor of a fund
    for the maintenance of a church organ gives his note to the
    church, and, on surrender of the note, makes a declaration of
    trust in favor of the church, said declaration is supported by
    the same consideration as was the pledge.

TRUSTS:   Construction and Operation—Complete Voluntary Trust—
7   Consideration Not Required.   A complete voluntary trust, being
    completely created, the subject-matter designated, and the trus-
    tee and beneficiary having been named, and the limitation and
    trust being fully and perfectly declared, requires no consid-
    eration for its validity.

*Appeal from Linn District Court.*—W. N. TREICHLER, Judge.

### JULY 7, 1919.

THE plaintiff church filed a claim against the estate of John B. Leigh, to recover the amount of a fund alleged to have been held in trust for its benefit by the said Leigh in his lifetime. The trial court found for the plaintiff, and the defendant appeals. The material facts are stated in the opinion.—*Affirmed.*

*F. L. Anderson* and *C. W. Kepler & Son,* for appellant.

*Dawley, Jordan & Dawley,* for appellee.

WEAVER, J.—The plaintiff church is, and for many years has been, an organized society for religious work and worship in the town of Mt. Vernon. Among its adherents and

supporters for a considerable period of time was the deceased, John B. Leigh. He was a man of some means, and manifested a spirit of liberality in sustaining the church of his choice. Some years prior to the transaction now in question, one Armstrong was also a leading member and elder of the local church. A son of this person, J. H. Armstrong, having grown up in the community, made his way to Chicago, where he prospered and acquired a degree of wealth.

About the opening of the year 1911, J. H. Armstrong visited Mt. Vernon, and while there, made a tentative suggestion to some members of the plaintiff church of his willingness, upon certain conditions, to furnish and install a pipe organ in the church building, at his own expense. After some discussion, the matter took the form of a definite proposal by Armstrong to furnish the organ, on condition that a permanent endowment fund was established, the income from which should be used in paying the expenses attendant upon the maintenance and use of the instrument.

Leigh does not appear to have been present when this offer was first considered on the part of the church, and at a meeting of the session and trustees, a committee was appointed to lay it before him. After an interview with him, the committee reported that it had been authorized by Leigh to say to Armstrong that he (Leigh) "would take care of the endowment part of the proposition, and that the donor should govern himself accordingly." At a meeting of the congregation, the above report was read, and a resolution adopted, approving the action of the session and trustees, and authorizing the board "to accept the offer and convey the thanks of the church to the donors."

This action being reported to Armstrong, he wrote to Leigh a letter, under date of January 19, 1911. After some words of a complimentary and reminiscent character, he said:

"A few years ago, I placed a large pipe organ in the chapel of Cornell College, in memory of my mother. This was before my father died. Knowing that the Presbyterian Church of Mt. Vernon is without an organ, and realizing how much that church was to my father and mother, as well as to me in the days of my youth, I have felt it to be a privilege, as well as a pleasure, to offer a pipe organ as a gift to the church, providing the officers of the church could assure me that a permanent fund from an endowment would be at their command, sufficient to provide for an organist, music, and upkeep of the organ. Today I am in receipt of copy of the official and church action of January 15, 1911, of which, no doubt, you have a copy, and I hasten to assure you of my keen appreciation of your cordial and generous response to the committee, wherein you assured them that you would take care of the endowment part of the proposition, and that I might govern myself accordingly. Now that you have made the way clear to provide a permanent endowment fund, the income from which is to care for the pipe organ, to pay for an organist, and to pay for appropriate music, I am ready to carry out my proposition to buy for the Presbyterian Church of Mt. Vernon, a pipe organ. * * * Your proposition, as above outlined, is certainly a most worthy one for establishing in perpetuity a fund which will assure the congregation of the Presbyterian Church music of a suitable and beautiful character, as a memorial that will honor your good name for all time to come; and while you live, not only the people of the church, but the citizens in general, will be proud of you, as well as of your carefully thought-out liberality."

On February 2, 1911, Leigh responded to this letter, saying:

"Your most kindly letter of January 19th received, with thanks for your kind expressions. It reminds me of old

times. As regards the church, I will make this a perpetuity fund, as I told the church committee."

The board of trustees also notified Armstrong in writing of the action of the church accepting his offer. Acting upon this arrangement, Armstrong did furnish and install the organ. Later, it being thought desirable to put the agreement into a more formal writing, the church, acting by its official representatives, entered into a written agreement with Leigh and wife, in substance as follows:

After reciting by way of preamble the offer of Armstrong to furnish the organ, on the assurance that a "permanent and adequate means should be provided in perpetuity for the upkeep of said organ and for appropriate music and accompanist," and that Leigh and wife had given their assurance of willingness "to provide such necessary funds in perpetuity," and that Armstrong, acting upon such assurance, had placed the organ in the church, at his own cost and expense, it was therefore declared that:

"We, John B. Leigh and Elizabeth A. Leigh, his wife, in conformity with such assurance heretofore made, do hereby give, devise, and bequeath in perpetuity to the said board of trustees of the Presbyterian Church, the same to be a perpetual memorial to ourselves, the sum of $8,000 for the purposes heretofore set forth, and upon condition that the said sum shall never at any time, as principal, be used for said purposes, but that the same shall at all times be invested in suitable and safe securities, such as real estate mortgages or securities of like character, but that the emoluments and profits thereof shall be used for the purposes and to the ends hereinbefore set forth, and for no other purposes whatsoever."

To this writing an addendum was made, before its execution, by which Leigh and wife undertook to pay to the church, for the purposes above specified, the sum of $400 per annum, during the life of John B. Leigh, and at his

death, the principal sum of $8,000 was to be paid over to
the board of trustees for the church. This paper was signed
by Leigh and wife and by the president and secretary of the
board of trustees for the church. This instrument having
been sent to Armstrong for examination, he submitted it to
counsel, who expressed the opinion that there was doubt
whether the agreement would be legally effectual, so far as
it related to the principal sum of $8,000, except, perhaps,
as a testamentary provision. Counsel further advised that,
to carry out the wishes of all parties, it would be better
"that the endowment fund be conveyed now to the trustees,
and surround the conveyance with the conditions imposed
*  *  *. This would be a comparatively simple matter to
arrange. However, if the donors do not wish to turn over
the principal until after their death, they could insure the
fund coming to the trustees better by executing their note
and delivering the same to the trustees, which would become
a proper charge against the estate of donors."

This advice was transmitted by Armstrong to the of-
ficers of the church, asking them to lay it before Leigh, and
saying:

"I know he is not only anxious, but will be determined
to have this matter placed where there can be no question
whatever about this endowment fund being placed in the
hands of the trustees of the Presbyterian Church of Mt.
Vernon. It would seem that either of the two suggestions
of our attorney would meet the approval of Mr. and Mrs.
Leigh. In case they should choose the latter, i. e., rather giv-
ing their note and delivering the same to the trustees now
for $8,000, they could do so at 5 per cent interest until such
time as one or both pass away. The interest would amount
to just $400, the amount of the annual payment during their
life."

Thereafter, and to carry out the suggestions of Arm-
strong and his counsel, other papers were signed and deliv-

ered as follows: Leigh and wife made and delivered their note in the following form:

"In consideration of Frank H. Armstrong of Chicago, Illinois, having provided and installed at his cost a pipe organ in the Presbyterian Church of Mt. Vernon, Iowa, said pipe organ being established as a permanent memorial to the memory of the deceased father and mother of said Armstrong, therefore, the undersigned being desirous that permanent and adequate means should be provided in perpetuity for the upkeep of said organ and all subsequent organs that may hereafter be installed in said church, and further for providing appropriate music and accompanist for the Presbyterian Church of Mt. Vernon, Iowa, we, the undersigned, John B. Leigh and his wife, Elizabeth A. Leigh, hereby agree to provide a fund, the amount of which is hereinafter stated, and the income thereof only shall be available for the purposes above mentioned. Said fund and the income therefrom shall constitute a perpetual memorial to ourselves.

"We therefore each or either of us hereby on demand promise to pay to the order of the board of trustees of the Presbyterian Church of Mt. Vernon, Iowa, the sum of $8,000, value received, with interest from date hereof at the rate of 5 per cent per annum.

"Dated this 1st day of January, 1912.

"Witness:                           J. B. Leigh

"W. E. Platner.                      Elizabeth A. Leigh."

To this instrument the following receipt was attached:

"The undersigned, being trustees of the Presbyterian Church of Mt. Vernon, Iowa, hereby acknowledge receipt of the sum of $8,000, from John B. Leigh and Elizabeth A. Leigh, in full settlement of the foregoing obligation.

"Dated at Mt. Vernon, Iowa, this 1st day of January, 1912.

"Witness:                           John J. Smyth, Chairman

"W. E. Platner.                      W. H. Kelly, Sec. Board."

Following the foregoing note and receipt was an instrument entitled:

"Acknowledgment of Receipt of Trust Fund.

"John B. Leigh, of Mt. Vernon, Iowa, hereby acknowledges receipt of the sum of $8,000 from the board of trustees of the Presbyterian Church of Mt. Vernon, Iowa, same to be held as a trust fund during the lifetime of the said John B. Leigh, said fund to be invested, and of the proceeds therefrom the sum of $400 shall be retained by the said John B. Leigh, it being mutually agreed that no additional charge be made for services as trustee. This trust shall continue during the lifetime of the said John B. Leigh. Upon termination of the trust, the principal sum shall at such be returned to the board of trustees of the Presbyterian Church of Mt. Vernon, Iowa.

"Dated at Mt. Vernon, Iowa, this 1st day of January, 1912.

"Witness:

"W. E. Platner.                    J. B. Leigh."

Also the following receipt:

"Received from the trustees of the Presbyterian Church of Mt. Vernon, Iowa, the sum of $8,000, which I hold as trustee for said church.

"Witness:

"W. E. Platner.                    J. B. Leigh."

No actual cash was paid or turned over by or between the parties; but, as we understand the testimony, the deceased having given his note or written promise to pay, it was accepted by the board of trustees as the equivalent of money to that amount, and as such it was then redelivered to Leigh, who received it as money constituting the fund of which he declared or acknowledged himself the trustee. The validity of the transaction and the obligation of such trust are not shown to have been questioned or denied by him at any time during the remainder of his life. It does

appear that, two years later, Leigh complained that his income was not sufficient to enable him to pay the stipulated annual charge of $400 without embarrassment, and he asked to be relieved therefrom. He also wrote Armstrong, asking him as a favor to take care of the installments for 1913 and 1914; but on neither occasion did he express any purpose to repudiate the trust, but impliedly, if not expressly, admitted his liability for the principal fund.

Leigh died in February, 1914, and the appellant herein became the executor of his will. The church, by its counsel. filed a claim against the estate for payment of the trust fund, as provided in the foregoing "Acknowledgment of Receipt of Trust Fund" and the attached receipt given by said Leigh.

The executor appeared to said claim, and denied that deceased had at any time received or become responsible for the alleged trust fund, or that his estate was in any manner indebted to the church.

A jury was impaneled for the trial of these issues, and the testimony offered disclosed the facts hereinbefore related, without any substantial dispute. At the close of the evidence, defendant moved for a directed verdict in his favor on the grounds:

1.  That decedent is shown not to have received or held in trust any money belonging to the plaintiff, and at his death had in his possession no money or property of the plaintiff; and

2.  That the agreement or promise, if any, relied upon by plaintiff appears to have been without consideration, and there was no completed gift or declaration of trust.

The motion was denied, and error is assigned on the ruling. Plaintiff's motion for a directed verdict in its favor was then sustained, and verdict returned accordingly, establishing the claim. Error is also assigned on this ruling.

I.  Objection is first made that this is an action at law,

and that plaintiff was allowed to recover as upon an accounting for an alleged trust, which is properly a matter of equitable cognizance. The point is not

1. TRIAL: method of trial: claims: trial without jury.

well made. Without regard to the legal or equitable character of the claim, it was the plaintiff's unquestionable right to present its claim to the court in the probate proceedings for allowance. If, when the issues were made up, either party desired to insist that the case should be tried in equity, it was open to him to raise the objection, and ask to have it set down for trial without a jury.

2. APPEAL AND ERROR: waiver affecting right: mode of trial below.

No question of that kind appearing to have been raised, the objection must be regarded as waived.

II. The further point is made that, while plaintiff brought its action upon the declaration of trust executed by Leigh, it was, in fact, permitted to recover upon the promissory note which Leigh gave, but took back, in exchange for the declaration of

3. APPEAL AND ERROR: review: presumptions: claim in probate: theory of claim.

trust extended by him. Such is not the record. The plaintiff's alleged right of action was based on the theory that there was a completed or perfected trust, and that, upon the death of Leigh, his estate became chargeable with the amount of the trust fund in favor of the church as the beneficiary of the trust; and it was upon that theory that we must presume the claim was established.

4. EVIDENCE: relevancy, materiality, and competency: declaration of trust: consideration.

The note and the details of the transaction of trust were, however, admissible in evidence as having a bearing upon the issue of consideration.

III. The one proposition most strenuously contended for is that, as no money passed from the church to Leigh, and as no property or thing of value was delivered to him except his own note,

there was no consideration for Leigh's undertaking, and the
trust was, at best, a mere promise to make
a gift, and of no valid force or effect.

5. CONTRACTS:
consideration:
maintenance
fund for church
organ.

There are several good and sufficient
reasons why the defense cannot prevail.

In the first place, a very substantial consid-
eration for Leigh's undertaking is clearly shown. His un-
dertaking to care for or provide the endowment fund was
the express consideration or inducement for Armstrong to
supply the church with a pipe organ. That consideration
and inducement were acted upon, and the improvement of
the church by the installment of the organ was accom-
plished. It is immaterial that the promised endowment was
for the benefit of the church, rather than of Armstrong;
for Armstrong could properly condition his gift of the or-
gan upon the raising of the endowment, to secure its use-
fulness to the church; and the person or persons undertak-
ing to supply the endowment, in order to induce the gift,
are not in a position to raise the question of consideration.
The pledge of an endowment was intended to induce Arm-
strong to part with his property, and at the same time to
secure a desired improvement to the church building; and,
such pledge having been acted upon, the obligation became
enforcible, according to the most familiar principles of the
law of contracts. The organ having been installed, and the
obligation of Leigh to provide the endowment being com-
plete, it only remained for him to pay over the amount he
had agreed to contribute, or to evidence such obligation in
such formal and businesslike manner as would, in due time,
secure its payment. This, in evident good faith, he sought
to do, and to that end executed first an instrument which
was thought to be somewhat defective in form; whereupon
the declaration of trust was substituted, under circumstan-
ces already detailed.

In its final form, the declaration is supported by the

same consideration which supported the original promise
or pledge. Leigh had made himself a debtor upon a valid
obligation to the church; and by agreement
with the church, that obligation was to be
met by his setting apart the required sum,
which he was to hold in trust for the benefit
of the church during the remainder of his
life. His note, when made and delivered to
the church, was property in the hands of the latter, and its
return to him as trustee was a sufficient designation and
setting apart of such sum as a trust fund, to be accounted
for as provided in the declaration of trust, as much so, in
fact, for all the purposes of the law as if, instead of the mak-
ing and transfer of the note, Leigh had first paid and de-
livered the sum of $8,000 in actual money to the church,
which thereupon returned it to him in trust for the purposes
named.

6. Trusts: construction and operation: consideration: declaration of trust upon surrender of note.

IV. Moreover, it is to be said that a consideration
moving from the beneficiary is not necessary to a valid and
enforcible voluntary trust. Even as a completed gift is
valid in law and equity, so also is a com-
pleted trust, even though its sole purpose
is to confer a voluntary benefit upon the
cestui que trust. True, the court will not
attempt to perfect an incomplete gift or in-
complete voluntary trust, but it will not re-
fuse to confirm the validity of either gift or trust, where
nothing remains to be done to designate the subject of the
gift or trust and set it apart for the use of the beneficiary.
A "complete" voluntary trust is not one which has been
performed, but is one which has been completely created:
that is, the subject-matter has been designated, the trustee
and beneficiary have been named, and the limitations and
trusts are fully and perfectly declared. 39 Cyc. 28.

7. Trusts: construction and operation: complete voluntary trust: consideration not required.

The terms "complete and incomplete," and "executory

and executed," as applied to trusts, have reference to the manner and perfection of their creation, rather than to the action of the trustee in administering the property. Bouvier defines a complete trust as one in which the estates and interest in the subject-matter of the trust are completely limited and defined by the instrument creating the trust, and require no further instruments to complete them. Applying these definitions to the case before us, it cannot be doubted that the trust declared is complete. The rule is made no less applicable by the fact that Leigh, who was the creator of the trust, was himself the trustee.

Mr. Pomeroy, in his work on Equity Jurisprudence (3d Ed.) Vol. 3, Sec. 996, speaking of the creation of voluntary trusts, says:

"While the maxim *Ex nudo facto non oritur actio,* operates in equity even more strictly than at the common law, so that a promise without any valuable consideration has no binding efficacy, still a valid trust may be created without any valuable consideration; if a trust has been completely declared, the absence of a valuable consideration is entirely immaterial."

The author quoted then proceeds to say, with reference to the modes in which the owner of property can transfer it for the benefit of another, that he may, first, convey or deliver it to the beneficiary directly; or, second, may make a transfer of it to a third person, upon trust declared in form of donee; or, third, may retain the title and declare himself trustee for the donee, and thus clothe the donee with the beneficial estate. Again, he says that, if the donor adopts this last method, "he need not use any technical words or language in express terms creating or declaring a trust, but he must employ language which shows unequivocally an intention on his part to create a trust in a third person, or to declare a trust in himself. It is not essential, however, that the donor should part with the pos-

session in the cases where he thus creates or declares a trust."

We think it would be very difficult for any candid and impartial reader of this record to doubt that the declaration of trust by the deceased measures fully and fairly up to the standard thus fixed by the authorities. The precedents for this holding are quite numerous. Many of them will be found collated in the article on Trusts in 39 Cyc. 1, and in 28 Am. and Eng. Encyc. Law (2d Ed.) 848; also, in the footnotes to the sections quoted supra from Pomeroy's Equity.

Indeed, we think no recognized authority is to be found, questioning the principles to which we here give our adherence. None of the cases cited by appellant announce any other or different doctrine. Many of them hold what we have conceded: that the court will not give effect to an imperfect gift or trust; but we are fully persuaded that the trust in this case is not of that description, and that it constitutes a valid claim against the estate of the deceased. Others of these cases consider the question of how far voluntary subscriptions and promises to pay for the benefit of churches and schools are valid and enforcible. It is probable that there has been some confusion in the decisions along this line; but if so, the rule, so far as this state is concerned, appears to have been settled in *University of Des Moines v. Livingston*, 57 Iowa 307; *Brokaw v. McElroy*, 162 Iowa 288; *Board of Trustees v. Noyes*, 165 Iowa 601.

But the undisputed facts in this case conclusively negative the plea of want of consideration. Further discussion is unnecessary. We hold that there was no error in directing a verdict for plaintiff, and the judgment below is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.