YOUNG MEN'S CHRISTIAN ASSOCIATION, Appellee, v. W. B. CAWARD, Appellant.

No. 40847.

NOVEMBER 17, 1931.

Arbuckle & Arbuckle, for appellee.

Pike, Sias, Zimmerman & Butler, for appellant.

DE GRAFF, J.—This is an ordinary action to recover the balance due on a written pledge or contract in words and figures as follows:

> "Building Site Pledge
> "3-3-1926

"For the purpose of wiping out existing mortgage and interest charges against the Waterloo Y.M.C.A., and in consideration of the pledges of others, I hereby pledge the sum of ............... Dollars (1000.00) payable in three payments as follows: $300.00 April 15, '26; $300. Jan. 15, '27; $400.00 July 15, '27.

> "Name A. H. Caward Estate
> "Address W. B. Caward, Adm.

"Make checks payable to 'Board of Trustees, Y.M.C.A.' $250 paid on July 9, 1927."

An amendment to the petition was filed by plaintiff, striking from the title of the cause the descriptive words "Administrator of the Estate of A. H. Caward, deceased."

Prior to the signing of the pledge contract, on March 3, 1926, the father of the defendant W. B. Caward died testate, to wit, February 26, 1926. He left a net estate of $320,474.28. His two sons, W. B. and Harry S., were named in the will as executors and qualified as such on March 18, 1926. It thus appears that at the time the pledge contract was signed by the defendant W. B. Caward he was not an executor or administrator. It appears that the President and General Secretary of the plaintiff Association interviewed the defendant for the purpose of soliciting a pledge from him as one of a group of four men, two from the east side and two from the west side of Waterloo, Iowa. It was the hope of said solicitors to secure a pledge of $1000 from each of the four men. The matter was discussed with the defendant, and the other three men were named at that time. The defendant in response to the appeal said that he would make a pledge "because he knew that his father would want

him to make one.'' It is shown that the father had theretofore made substantial donations to the plaintiff Association. It may be repeated that at the time of this interview and signing of the subscription by the defendant, the will of the senior Caward, the father, had not been probated and the executors named in the will had not yet qualified. In fact no administrator was ever appointed, either general or special. The defendant-appellant testified that he had no intention of making a personal pledge.

''I told them (the Y.M.C.A. committee) I hadn't made any commitment myself and was willing to sign this card from the fact I knew my father's will was left in such a way that his word should be kept to various friends and benevolent organizations and that I knew he had made some preparation for this.''

The evidence discloses that the two signers of the pledge subscription (Graham and Lichty) from the east side of Waterloo paid their $1000 pledges, and at the time of the interview of the committee with defendant the latter was informed of this fact. The defendant was told that the committee visited him to get the $1000 pledge and that they expected to get the other $1000 from Harry Northey, which was later secured on the strength of the Caward pledge.

Propositions, both major and minor, upon which reversible error is predicated, are found in appellant's brief. The major propositions as we view this case are three in number and in interrogative form may be stated as follows:

(1) Was the contract supported by a sufficient consideration? The appellant answers in the negative, the appellee in the affirmative.

(2) Did the parties intend that the defendant should be bound by the pledge contract in question?

(3) Can an executor or administrator, as such, in the absence of authority given by the will or by statute, bind the estate he represents by an executory contract, or is he bound personally?

I. The defendant admitted that he executed and delivered the instant pledge contract. The law imports a consideration for such a contract even though none had been specifically stated. Section 9440, Code, 1927. The burden of proof

was on the defendant to prove that there was no consideration. A consideration specifically recited in a contract must be treated as correct in the absence of any counter showing. Burrow v. County of Woodbury, 200 Iowa 787. His denial in his answer, that "no consideration whatever was received by him," does not relieve him of the burden. However, the instrument in question heretofore quoted states a specific consideration, which was "for the purpose of wiping out existing mortgage and interest charges against the Waterloo Y.M.C.A. and in consideration of the pledges of others."

The defendant executed and delivered the pledge contract. There is no question or doubt under the law of Iowa that a pledge such as we have in the instant case creates a binding obligation. Brokaw v. McElroy, 162 Iowa 288, l. c. 292; Trustees v. Noyes, 165 Iowa 601, l. c. 605; King v. Carroll, 129 Iowa 364, l. c. 367. It is true that some conflict in decisions in our sister states exists, but the rule or principle announced by this court is what may be termed the modern doctrine. Appellant relies on Simpson Centenary College v. Tuttle, 71 Iowa 596, but an examination of this decision discloses that the facts therein are not analogous to the instant facts. The gist of the Simpson Centenary case, supra, is that "a gift is not complete until the money or property constituting the subject of the gift is actually delivered, and before such delivery the gift may be revoked." We have no quarrel with the doctrine announced, but it is not applicable here.

In this connection it may be noted that appellant predicates error on the overruling of his motion for a more specific statement of plaintiff's cause of action. There is no error here as the defendant after the motion was ruled filed his answer. As said in Heiman v. Felder, 178 Iowa 740, l. c. 747: "Any error in overruling that motion is waived by answering." See, also, Wattels Exr. v. Minchen, 93 Iowa 517.

The defendant in his filed answer denies that the said pledge, "or so much of the same as was paid to the plaintiff, was used for the purpose of wiping out existing mortgage and interest charges." In answer thereto it may be said that the only failure sufficient to constitute a defense is failure in the very consideration stipulated by the terms of the pledge itself. The improper use of funds, if such is the fact, would not con-

stitute failure of consideration. Albert Lea College v. Brown, 88 Minn. 524; 60 L. R. A. 870. The right of the plaintiff Y. M. C. A. to accept donations from charitably disposed persons is not questioned; and if what the defendant alleges, as herein quoted, is true, whether a remedy to the donor exists by the commencement of proper judicial proceedings is not before us for consideration.

II. It is argued that the intention was to the effect that the defendant was not to be bound by the pledge contract. There is no merit, under the evidence, to this proposition. The non-liability of the defendant based on the intent of the parties rests solely upon his traverse.

III. The final determinative proposition is whether or not the defendant is personally liable. At the threshold of the statement of the legal principle it may be affirmed definitely that the law of agency involving the personal liability of an agent on a contract purporting to have been made by him for his principal does not apply under the facts in the case at bar. An executor or administrator is not an agent in the sense that he may under any pretext escape personal liability on contracts entered into by him on behalf of the estate which he represents. This court has repeatedly affirmed this doctrine. The foundation of this action is an unambiguous written instrument which undertakes to create a liability. The defendant signed and delivered the instrument. He therefore obligated himself personally, whether he intended to bind the estate or not. The case of Winter v. Hite, 3 Iowa (Clarke) 142, involved the contract of an executrix, and it is there said that such a case should not be confounded with those of agency. We quote from the opinion in Winter v. Hite, supra, wherein it is said:

"An executor, administrator, or a guardian, cannot give a promissory note which shall be binding as such on the estate he represents, or on his ward. He is individually answerable upon such promises. This has long been well settled law."

To the same effect is Rickel, Crocker & Christy v. C. R. I. & P. Ry. Co., 112 Iowa 148. In the opinion of that case it is said:

"The contention of the appellant is that the administrator had no power or authority to enter into such a contract on behalf of the estate, and that he alone is bound thereby. That the

weight of authority fully sustains this position must be conceded.''

The Rickel case, supra, cites a large number of authorities, including Winter v. Hite, 3 Iowa 142. In the comparatively recent case of Cohen v. Hayden, 180 Iowa 232, the doctrine of the Winter case supra is reaffirmed. It is there said:

''These general rules (previously stated in the opinion) touching agency and the liability or non-liability of an agent are not controlling in a case such as we have here presented. Agency implies that there is a principal for whom the party is an agent. * * * 'An executor or administrator cannot, in the absence of authority given by the will of the decedent, or by statute, make an executory contract binding on the estate he represents. If he assumes to make such contract on a new and independent consideration, it is his personal obligation, and he will be bound thereby, although the debt was incurred for the benefit of the estate.' ''

See, also, Dunne v. Deery, 40 Iowa 251; Peoria Steam Marble Works v. Hickey, 110 Iowa 276; Cheyne v. Quackenbush, 198 Iowa 420; Ilten & Taege v. Pfister, 202 Iowa 833; 3 R. C. L. 1092, par. 301.

The major propositions discussed herein determine the liability of the defendant. The judgment entered by the trial court is correct and must be—Affirmed.

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.