John SALSBURY, Appellee,

v.

**NORTHWESTERN BELL TELEPHONE COMPANY, Appellant.**

No. 55960.

Supreme Court of Iowa.

Sept. 18, 1974.

Laird, Burington, Bovard & Heiny, Mason City, and William F. McFarlin, Des Moines, for appellant.

Boyd G. Hayes, Charles City, and William Pappas, Mason City, for appellee.

HARRIS, Justice.

This is the third appeal in which we have considered a claim of charitable subscription following the collapse of an attempt to establish a college in Charles City.

In Pappas v. Hauser, 197 N.W.2d 607 (Iowa 1972) and Pappas v. Bever, 219 N.W.2d 720 (Iowa 1974) we held pledges not legally binding. In this case a letter was sent by the subscriber in lieu of executing the pledge form. The trial court held the letter bound its sender. We affirm.

█ In this law action for declaratory judgment the trial court's findings have the effect of a jury verdict. Rule 267 and 344(f)(1), Rules of Civil Procedure.

John Salsbury (plaintiff) participated in the efforts to establish Charles City College (the college). He was the first and only chairman of the college's board of trustees. The funding project for the college was described in Pappas v. Hauser, supra. As part of the funding drive Peter Bruno, a professional fund raiser, solicited a subscription from Northwestern Bell Telephone Company (defendant). Defendant's office manager in Charles City was Daryl V. Winder who was also active in the campaign to raise money for the college. Bruno negotiated a number of times with Winder for the subscription from defendant.

As a fund solicitor Winder had been given a kit which included pledge forms of the type described in Pappas v. Hauser, supra, and Pappas v. Bever, supra. Winder lacked authority to bind defendant for a pledge but conveyed the request to superiors in defendant corporation. Winder apparently did not have a pledge form available when he received defendant's consent for the subscription. Accordingly he wrote a letter to Bruno as follows:

"This is to advise you that the contribution from Northwestern Bell Telephone Co. to the Charles City College has been approved by Mr. E. A. McDaniel, District Manager, Mason City.

"The $15,000 contribution will be made over a three year period, in three equal payments. Our first $5000 payment will be made in 1968.

"We are very pleased to add our name to the list of contributors to this fine community undertaking.

"If I can be of further assitance, please feel free to contact me."

The college and all others treated the letter exactly as another pledge card. In common with executed pledge cards it was assigned to a material supplier of the college. The letter itself was not transmitted to the supplier. A pledge card form was typed-in to reflect the $15,000 pledge though it was not signed by defendant. If any document reflecting defendant's intended contribution was forwarded in connection with the assignment to the supplier it was a copy of the typed-in pledge card.

Plaintiff executed a personal guaranty in order to gain credit from the supplier. Subscription pledges secured the obligation. The supplier then assigned the pledges to American Acceptance Corporation of Philadelphia, Pennsylvania, and finally, after settling with plaintiff, American Acceptance Corporation assigned them to him. In all assignments no copy of the letter was shown or given. Plaintiff conceded he had no knowledge of the letter. He acted in the belief defendant was obligated in the same manner as those who executed pledge cards.

As we have seen in the earlier cases cited the college failed after a short operation. In this appeal we are faced with the question of whether defendant is bound to pay his subscription by reason of the letter. Pappas v. Bever, supra, stands as authority defendant would not be bound had it executed only the pledge card.

I. The trial court held the letter was a promissory undertaking which constituted a basis for contractual liability. This holding is challenged as being at variance with the understanding of the parties when the letter was given and received.

Evidence of extrinsic facts and circumstances surrounding other subscriptions

was objected to by defendant on the claim it was immaterial and hearsay. After the objections were sustained defendant made offers of proof in an attempt to show the pledge cards were given and received with the understanding they would not be binding. See Pappas v. Hauser, supra, 197 N. W.2d at 609. No witness could recall whether the letter was subject to the same understanding.

Plaintiff conceded letters, such as defendant's, were sometimes taken "in lieu of" pledge cards and were accepted on the "same basis." Plaintiff also admitted he had not seen defendant's letter until trial and had been unaware of its contents until two months before trial. He was aware defendant's pledge was by letter rather than pledge card.

▮▮ Defendant assigns as first error the refusal of the trial court to admit the evidence offered to show pledge cards were not considered binding by the college. In this assignment defendant stands on a now familiar principle. The parol evidence rule is one of substantive law which forbids the use of extrinsic evidence to vary, add to, or subtract from a written agreement. But the rule does not come into play until by interpretation the meaning of the writing is ascertained. Egan v. Egan, 212 N.W.2d 461 (Iowa 1973); Hamilton v. Wosepka, 261 Iowa 299, 306, 154 N.W.2d 164, 168. Plaintiff does not dispute this principle but argues it is inapplicable because of another determination by the trial court.

▮ The trial court refused to proceed from plaintiff's concession that letters were taken "in lieu of" and on the "same basis" as pledge cards. Defendant assumes it must follow the parties agreed any liabilities and rights under any letter, no matter how it was worded, were fixed by the wording of the pledge cards. The trial court did not agree. It ruled: " * * * A pledge card * * * was never presented to or signed by the defendant, and is irrelevant to any undertaking of the defend-

ant. Any obligation of the defendant must be based on its letter."

We find nothing in plaintiff's concession which rises to an admission all letters were understood to bind the signer in exact accordance with the wording of an unsigned pledge card. The record supports the trial court's determination that defendant's letter set its own terms and was impervious to defenses which might avail against the pledge cards. It follows the trial court was right in excluding as irrelevant the evidence of circumstances surrounding execution of pledge cards.

It should also be pointed out the trial court expressly found the substance of what defendant sought to establish by the excluded evidence. The trial court found: " * * * There is evidence that Mr. Bruno [fund raiser for the college] stated to several people that this card, when filled in and signed, was not a legal obligation. Such a card was never presented to or signed by the defendant herein."

There is no merit in defendant's first assignment.

II. Defendant separately assigns the claim the trial court failed to apply fundamental contract principles. It is argued there was a failure of consideration because the college failed before any sums were scheduled for payment under the terms of the letter. It is also claimed the trial court should have given the letter the practical construction adopted by the college when it treated it the same as a pledge card. These assignments presuppose a charitable subscription should be viewed by routine contract standards. Many cases, including our own, have considered charitable subscriptions as desirable but enforceable only upon a showing of consideration sufficient for contractual liability.

Cases throughout the country clearly reflect a conflict between the desired goal of enforcing charitable subscriptions and the realities of contract law. The result has

been strained reasoning which has been the subject of considerable criticism. This criticism is directed toward efforts by the courts to secure a substitute for consideration in charitable subscriptions. These efforts were thought necessary to bind the subscriber on a contract theory. Yet, in the nature of charitable subscriptions, it is presupposed the promise is made as a gift and not in return for consideration. 1 Williston on Contracts, Third Ed., § 116, page 473.

Consideration sufficient for a binding contract has been found under various criticized theories. Id. at 476–479. We have found consideration in the promises of other subscribers. Brokaw v. McElroy, 162 Iowa 288, 143 N.W. 1087; Trustees v. Noyes, 165 Iowa 601, 146 N.W. 848; In re Estate of Leigh, 186 Iowa 931, 173 N.W. 143; Young Men's Christian Assn. v. Caward, 213 Iowa 408, 239 N.W. 41. This theory is also criticized:

" * * * The difficulty with this view is its lack of conformity to the facts. It is doubtless possible for two or more persons to make mutual promises that each will give a specified amount to a charity or other object, but in the case of ordinary charitable subscriptions, the promise of each subscriber is made directly to the charity or its trustees, and it is frequently made without any reference to the subscription of others. If induced at all by previous or expected subscriptions, this inducement only affects the motive of the subscriber; it cannot be said that the previous subscriptions were given in exchange for the later one. Indeed the earlier subscriptions would be open to the objection of being past consideration so far as a later subscription was concerned. * * *." 1 Williston on Contracts, supra, pages 476–477.

In reaction to this widespread criticism a number of courts have turned to promissory estoppel as an alternative for the consideration requirement. 1 Williston on Contracts, Third Ed., § 140, pages 607–619;

83 C.J.S., Subscriptions, § 5b(2), 736 at 737–738; 73 Am.Jur.2d, Subscriptions, § 13, pages 704–705.

■ If promissory estoppel were to be the standard or criterion for enforcement this defendant probably could not be bound on the pledge. Estoppel can never arise unless there has been reliance. McKeon v. City of Council Bluffs, 206 Iowa 556, 221 N.W. 351, 62 A.L.R. 1006; King v. Knudson, 209 Iowa 1214, 229 N.W. 839; Holden v. Construction Machinery Company, 202 N.W.2d 348 (Iowa 1972); 31 C.J.S. Estoppel § 71, pages 428–438; 28 Am.Jur.2d, Estoppel & Waiver, § 76, pages 710–712. Plaintiff relied on defendant's letter but not the form of it. Plaintiff conceded he had not even seen the letter until shortly before trial. And it is the form of the letter that distinguishes it from the pledge cards we have held not to be binding. Pappas v. Bever, supra.

■ We acknowledge as valid the criticism of cases which enforce charitable subscriptions only on a fictional finding of consideration. But we are reluctant to adopt promissory estoppel as the sole alternative basis for such enforcement.

" * * * [W]ide variation in reasoning indicates the difficulty of enforcing a charitable subscription on grounds of consideration. Yet, the courts have generally striven to find grounds for enforcement, indicating the depth of feeling in this country that private philanthropy serves a highly important function in our society.

"Of late, courts have tended to abandon the attempt to utilize traditional contract doctrines to sustain subscriptions and have placed their decision on grounds of promissory estoppel. Surprisingly, however, if promissory estoppel, in its traditional form, is widely adopted as the grounds upon which such subscriptions are to be tested, fewer subscriptions are likely to be enforced than previously. Under previous holdings, despite the conceptual inadequacy of the reasoning, promises were frequently

enforced without regard to detrimental reliance on the promise. It was enough that the promisor had subscribed. If enforcement of charitable subscriptions is a desirable goal, it would seem sounder to view the preponderance of the cases as supporting the proposition that a charitable subscription is enforceable without consideration and without detrimental reliance. This seems to be the position taken in Restatement Second. Recognition of such a rule would also put an end to the flood of needless litigation created by the caution of executors and administrators who, for self-protection against surcharging, will not pay out on a subscription without a court decree." Calamari & Perillo, Law of Contracts, § 103, pages 177–178.

The tentative draft of Restatement of Contracts, Second, includes a new subparagraph 2. Section 90 now reads as follows:

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

"(2) A charitable subscription or a marriage settlement is binding under Subsection (1) without proof that the promise induced action or forbearance."

We believe public policy supports this view. It is more logical to bind charitable subscriptions without requiring a showing of consideration or detrimental reliance.

■ Charitable subscriptions often serve the public interest by making possible projects which otherwise could never come about. It is true some fund raising campaigns are not conducted on a plan which calls for subscriptions to be binding. In such cases we do not hesitate to hold them not binding. Pappas v. Bever, supra. However where a subscription is unequivocal the pledgor should be made to keep his word.

Affirmed.

All Justices concur except LeGRAND and REYNOLDSON, JJ., who dissent.