**P.H.C.C.C., INC., an Iowa Nonprofit Corporation, Appellee,**

v.

**B.J. JOHNSTON, Appellant.**

**No. 68962.**

Supreme Court of Iowa.

Nov. 23, 1983.

G.A. Cady III, of Hobson, Cady & Drew, Hampton, for appellant.

Ronald J. Pepples, Parkersburg, for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

The defendant, B.G. Johnston, appeals from an adverse judgment in this action to recover the balance due on a charitable subscription. He contends on appeal that the subscription agreement upon which the claim is based was not obligatory and therefore is unenforceable. He further claims that the district court erred in instructing the jury that in the absence of a specified time for payment, the subscription was payable upon demand. Because we find no merit in either of these contentions, we affirm the judgment of the district court.

The plaintiff is a nonprofit corporation organized for the purposes of encouraging

medical doctors to locate in the town of Parkersburg, Iowa and providing a facility for their practice. Plaintiff contends that the defendant lent his encouragement and financial support toward that effort, spoke at a public meeting in favor thereof, and promised to pay the plaintiff $50,000 as a charitable contribution toward that project. It is further alleged that the defendant made payments of $12,750 on his subscription leaving a balance owing of $37,250.

The defendant, who was incompetent at the time of trial, contended that he was incompetent and subject to undue influence at the time of the execution of the charitable subscription agreement. He does not urge these claims on appeal. He further contended at trial in his motion for directed verdict that the form utilized for the alleged subscription agreement failed to specify payment terms and was not obligatory in legal effect. Defendant counterclaimed for the return of the $12,750 which he had paid on the subscription agreement.

The evidence produced at trial reveals that the defendant was a retired grain elevator operator. He enjoyed the reputation of a philanthropist in the city of Parkersburg as a result of having donated $110,000 to the local school district in the 1960's. In the fall of 1976 when defendant was 79 or 80 years of age, he attended a public meeting concerning the solicitation which is the subject of this dispute. At this meeting, he spoke favorably of the project and announced his intention to donate the sum of $50,000 toward the effort.

On December 18, 1976, an officer of the plaintiff corporation contacted defendant about his proposed subscription. The defendant was handed a subscription card and advised that the subscription could be paid over a five-year period. The defendant read the card, filled in the amount of $50,-000 and signed it. He returned the card to the officer of the plaintiff corporation without writing anything on those lines regarding the time for payment. The subscription agreement as completed was in the following form:

I ... do hereby subscribe and promise to pay P.H.C.C.C., Inc., at Parkersburg, Iowa, the total sum of $50,000.00.

I shall pay this subscription as follows:

1st year _____          Due Date _____
2nd year _____
3rd year _____
4th year _____
5th year _____

Dated this 18th day of Dec., 1976.

/s/B. G. Johnston
Signature of Donor

Subsequently, the defendant arranged for the sale of 3000 shares of stock in a closely held corporation. These shares were sold on the following dates: October 5, 1977; November 18, 1977; January 4, 1978; and January 5, 1978. The money provided by the sale of this stock totaling $12,750 was transferred to the plaintiff corporation to apply upon defendant's pledge. A local banker testified at the trial that the defendant had discussed with him the sale of certain bonds because "he wanted to get his pledge taken care of." The plaintiff corporation had completed the proposed medical facility by the time of the trial in the present action. The construction involved the use of borrowed funds. Defendant's subscription had been pledged to a bank as security for this loan.

Following the close of the evidence, the case was submitted to the jury on five special interrogatories. By its answers to these interrogatories, the jury determined: (1) that the plaintiff accepted the December 18, 1976, written subscription agreement of the defendant; (2) that the defendant did pay $12,750 on the obligation to which he had subscribed; (3) that the defendant was not of unsound mind nor incompetent at the time he executed and delivered the subscription agreement; and (4) that the defendant was not subject to undue influence at the time he executed or delivered the subscription agreement.

On the basis of the answers to the interrogatories, the court entered a decision and judgment that the subscription agreement was obligatory and enforceable for the unpaid sum of $37,250 and dismissed the defendant's counterclaim.

## I. *Obligatory Character of Charitable Subscription.*

▮ We first consider defendant's claim on appeal that his motion for directed verdict should have been sustained on the ground the instrument of pledge was not obligatory. He cites and relies on our decisions in *Pappas v. Hauser,* 197 N.W.2d 607, 612–13 (Iowa 1972) and *Pappas v. Bever,* 219 N.W.2d 720, 721 (Iowa 1974), which held the form of the charitable subscriptions involved in those cases to be nonobligatory and therefore unenforceable. In each of those cases, the form of the pledge was cast in terms of "I intend to subscribe" and "I intend to pay" the subscription. In *Hauser,* we held that this language was not obligatory in the face of extrinsic evidence that it was not intended to be. In *Bever,* we held that such language was not obligatory in the absence of extrinsic evidence that it was intended to be binding.

In the subsequent case of *Salsbury v. Northwestern Bell Telephone Co.,* 221 N.W.2d 609, 611–13 (Iowa 1974), we limited the *Hauser* and *Bever* holdings to their particular facts and enforced a charitable subscription to the same cause which was involved in *Hauser* and *Bever.* The form of the agreement undertaken by the subscriber in the *Salsbury* case was as follows:

This is to advise you that the contribution . . . has been approved. . . .

The $15,000 contribution will be made over a three-year period, in three equal payments. Our first $5000 payment will be made in 1968.

*Id.* at 610. We held this language to be obligatory within the context of its execution and further opted to follow the rule now stated in *Restatement (Second) of Contracts,* section 90(2) (1979) that charitable subscriptions are binding without proof of action or forbearance. *Id.* at 613.

In deciding defendant's contentions on this appeal in accordance with our prior decisions, we find the language employed in the charitable subscription agreement in the present case to be sufficiently obligatory in nature to render the agreement enforceable. Moreover, the extrinsic evidence

of intent which was before the court in the present case strongly supports and in no way detracts from this conclusion. Finally, although not necessary under the standard adopted in *Salsbury,* the present case does contain strong evidence of reliance on the part of the grantee of the subscription.

## II. *Failure to Specify Time of Payment.*

▮ As a corollary to his argument that the pledge is nonobligatory, defendant asserts that the failure to specify the time of payment renders the instrument nonobligatory. He urges this result is compelled by our decision in *In re Estate of Philpott,* 169 Iowa 555, 557–58, 151 N.W. 825, 826–27 (1915). In that case, the payment was to be made "on or before _four___ after date." The modifier "four" had been inserted in a blank space in the instrument, but no unit of time was inserted to give the modifier meaning. The issue in *Philpott* was whether this omission destroyed negotiability and therefore permitted certain defenses to be raised against a holder in due course. The court held that such omission did destroy negotiability but recognized the possibility that the note might have been enforced between the original parties. The *Philpott* decision adds little support to defendant's claim in the present case.

Plaintiff asserts that the issue is controlled by Iowa Code section 554.3108 (1981) which provides, in part: "instruments payable on demand include those . . . in which no time for payment is stated." It notes that a treatise writer has stated:

When a note is completely executed except that the time for payment and the lines indicating payment by installments are left blank the full amount of the note is payable on demand, as opposed to the contention that no amount is payable. Thus, it has been held that where the maker signed a printed form of a note and did not fill in any schedule of payments in the blanks provided for that purpose but merely promised to pay the sum of $3,400, the note was for that amount payable on demand on the theory

777

that an instrument which contains no time as to payment is payable on demand. 2 Anderson, Uniform Commercial Code, § 3–108:5 at 646 (2d ed. 1971).

The defendant contends that section 554.-3108 has no applicability to the present transaction because the subscription agreement is not a negotiable instrument. We note in this regard that the application of Article 3 of the Uniform Commercial Code extends to some instruments which are not negotiable. *See* Iowa Code section 554.-3805; Helstad, *Scope of Article 3 of the Uniform Commercial Code,* 1964 Wis.L.Rev. 355, 366–67.

We need not decide whether Article 3 of the Uniform Commercial Code is directly applicable to the present transaction. It appears that section 554.3108 only states that which has been the common law of this state since *Green v. Drebilbis,* 1 Greene 552 (1848) where the court stated: "the principle is recognized, that if no time of payment is mentioned in a note, it operates like a check on a banker, as payable on demand." No reason has been advanced by the defendant for applying a different rule of law in adjudicating its obligations in the present case.

We conclude that the trial court did not misapply the law in adjudicating defendant's liability. Moreover, the objection lodged by defendant to Instruction No. 10, even if valid, would not constitute reversible error. The jury was only required to answer five special interrogatories, none of which related to whether or not the note was payable on demand.

Even if we were to assume that the time of payment could not be decided against defendant as a matter of law, neither could it be decided in his favor as a matter of law. Any issue of fact not submitted to the jury was left for the trial court to resolve under Iowa Rule of Civil Procedure 205. That rule provides, in part:

If the submission omits any issue of fact, any party not demanding submission of such issue before the jury retires waives jury trial thereof, and the court may find upon it; failing which, it shall be deemed

found in accord with the judgment on the special verdict.

The judgment entered on the special verdict in the present case is consistent with a finding that the agreement was payable on demand. Certainly this was a permissible finding on the record. We have considered all issues presented and find no basis for reversal.

AFFIRMED.