## READ v. FOX et al.

(Supreme Court, Appellate Division, First Department. May 10, 1907.)

CONTRACTS—ACTIONS FOR BREACH—FORM OF REMEDY.

A contract to transfer an agency contract held by assignor provided that the assignment should be conditional upon the assignee faithfully carrying out the requirements of the agency contract, and that, in the event of its failure to do so, the agency should revert back to the assignor; that the agreement contemplated that all necessary capital to conduct the business of assignee should be furnished by certain other persons named, and that a failure to furnish the capital should constitute failure on the part of the assignee to properly carry out the agency contract; that a certain number of the shares of the assignee should be transferred to assignor, and that he should receive a stated salary from assignee. Held, that if the contract could be construed as a binding agreement on the part of the persons named to furnish the capital, yet the assignor's

remedy for a breach was to seek a reassignment of the agency contract, and he was not entitled to maintain an action for damages for the breach.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1517.]

Appeal from Special Term, New York County.

Action by Linus G. Read against Samuel R. Fox and another. From a judgment overruling their separate demurrers, defendants appeal. Judgment reversed, and demurrers sustained.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

John M. Harrington, for appellants.
Asa Bird Gardiner, for respondent.

SCOTT, J. The action is for damages for breach of a contract. The contract it attached to and made part of the complaint. It appears that plaintiff had an agency contract with the Warren Electric Manufacturing Company of Sandusky, Ohio, and the purpose of the contract was to provide for transferring that agency contract to the Turbine Engineering Company which was apparently controlled by the defendants. The 'contract provided that 300 shares of the stock of the turbine company should be transferred to plaintiff (which was done), and that a voting trust should be created controlling a majority of the stock, and that four directors of the turbine company should be named by plaintiff, and three by the defendant Fox. It appears from the complaint that all these preliminaries were carried out, and that shortly after the execution of the agreement (September 11, 1905) the plaintiff assigned his agency contract with the Warren Electric Company, to the Turbine Engineering Company, of which he was thereupon elected manager (and subsequently president) at a salary of $500 per month; this being in accordance with the contract which assured him that salary until February 11, 1910. Section 5 of the contract provided, among other things, that:

"Said assignment of said [agency] contract shall be conditional upon the Turbine Engineering Company faithfully carrying out the requirements of such agency contract, and that in the event of the Turbine Engineering Company's failure so to do, or in the event of the Turbine Engineering Company for any reason going out of existence, then the said agency shall revert back to said Read."

The eighth clause of the contract, which is the one the defendants are accused of breaking, reads as follows:

"This memorandum of agreement contemplates that all the necessary capital to conduct the business of the Turbine Engineering Company and its representation of the Warren Electric Manufacturing Company shall be furnished or cause to be furnished by S. R. Fox or the Fox Security Company, and that failure to furnish said necessary capital shall constitute failure on the part of the Turbine Engineering Company in its proper representation of the Warren Electric Manufacturing Company."

The breach alleged is: That after February 15, 1906, the defendants neglected and refused to furnish the necessary capital to continue the business of the Turbine Engineering Company, in consequence of which it became indebted to its employés, and for telephone charges and office rents, and that a judgment was obtained against it and its

assets sold, and it was prevented from continuing business. That in consequence of this failure to furnish capital plaintiff lost his promised salary until February, 1910, was injured in his reputation as a business man, and his 300 shares of stock in the turbine company were rendered valueless, and for these damages he seeks to recover.

It is very doubtful in the first place whether there can be spelled out of the contract a definite agreement on the part of the defendants to furnish the capital. The language of the eighth clause is peculiar. It is that "this memorandum of agreement contemplates" that the defendants shall furnish the necessary capital. The word "contemplates" indicates rather an expectation or intention, than a promise or undertaking. If the defendants had intended to definitely agree to furnish the working capital nothing would have been easier or simpler than to have said so, and that they did not say so, but selected a phrase indicative merely of an intention is certainly very significant. But even if the contract could be construed as a binding agreement on defendant's part to furnish the capital, the contract itself provides what consequences shall flow from a refusal to do so. It shall "constitute failure on the part of the Turbine Engineering Company in its proper representation of the Warren Electric Manufacturing Company" (clause 8), and if the Turbine Engineering Company shall fail "to faithfully carry out the requirements of the agency contract" with the Warren Company, "then the said agency contract shall revert back to said Read" (clause 5). Under well-established principles, when parties by their contract specifically provide for the consequences of a breach, the remedy thus provided is exclusive. McCready v. Lindenborn, 172 N. Y. 400, 65 N. E. 208. The plaintiff's remedy, then, was to seek a reassignment of his agency contract, and his action for damages cannot prevail.

The judgment should be reversed, and the demurrer sustained, with costs to appellant in this court and the court below. All concur.

CHICAGO TITLE & TRUST CO. et al. v. GERMAN INS. CO. OF FREEPORT.

(Supreme Court, Appellate Division, First Department.  May 10, 1907.)

RECEIVERS—ASSIGNMENT—ANCILLARY RECEIVERSHIP.

Where, on the appointment of a foreign receiver for an insolvent foreign insurance company, the latter executed an assignment to such receiver, which covered all the insurance company's assets in New York, the subsequent appointment of ancillary receivers by the New York courts was ineffective to transfer any of the insurance company's assets to them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 412.]

Appeal from Special Term, New York County.