CHESTER SLAUGHTER ET AL. V. ETTA McMANIGAL ET AL., MARY E. BLANFORD ET AL., Appellants.

138   643.
140    62

Conveyances: UNDUE INFLUENCE. Mere suspicion, arising from
1 opportunity and personal interest, that a son suggested or
procured the making of a conveyance from his father to him-
self, is not sufficient to warrant a conclusion of undue influ-
ence.

Same: MENTAL INCAPACITY. Mere impairment of physical powers
2 by age and the incident loss of mental vigor is not sufficient
to incapacitate one from making a disposition of his property
among his children.

Family settlement: CONSIDERATION: STATUE OF FRAUDS. A joint
3 agreement in the nature of a family settlement, to be sup-
ported by a consideration, must have been mutually assented
to by all of the parties thereto; and the agreement to pay
money one to the other for the purpose of equalizing their
interests, after the expiration of one year, cannot be shown
by parol.

Family settlement: SUFFICIENCY OF PROOF. A joint family settle-
4 ment involving the payment of money from one member of
the family to another must be clearly proven by direct and
positive testimony. Evidence held insufficient to show a set-
tlement.

Waiver of jury trial. A party who has voluntarily set up his claim
5 in a partition action before filing it against the estate, cannot
complain because the court consolidates the proceedings and
tries them without the intervention of a jury.

*Appeal from Jasper District Court.*— HON. BYRON W.
PRESTON, Judge.

TUESDAY, JUNE 9, 1908.

ACTION for partition of two hundred and forty acres of
land in Jasper county among the heirs of Solomon M.
Slaughter. Partition was resisted by the heirs of Joseph and
Belinda Slaughter, from whom Solomon acquired title, on

the ground that the conveyance to him was void for want of mental capacity and undue influence. By cross-bill and petition of intervention similar issues were raised with reference to a deed from Joseph and Belinda Slaughter to Z. T. Slaughter, otherwise known as Taylor Slaughter, a brother of Solomon. Two claims against the estates of Solomon and Taylor Slaughter, respectively, in favor of Mary Blanford and W. S. Slaughter, otherwise known as Scott Slaughter, were consolidated with the equitable action for partition, and there was a decree sustaining the validity of the deed and disallowing the claims against the estates. From this decree, Mary Blanford and Scott Slaughter appeal.— *Affirmed.*

*Cragan Bros., F. H. Clements,* and *O. P. Meyers,* for appellants.

*McElroy & Cox, E. J. Salmon,* and *Henry Silwold,* for appellees.

McCLAIN, J.— In 1893 Joseph Slaughter and Belinda Slaughter, husband and wife, executed two deeds, each for two hundred and forty acres of land in Jasper county, to their sons Solomon and Taylor, respectively, in each of which life estates were reserved to the grantors, and a charge was made for the payment of $3,000 after the termination of said life estates, in the one case to the children of Scott Slaughter, and in the other case to Mary Blanford. These four were the children of Joseph and Belinda Slaughter. There was another child who had been otherwise provided for, and whose heirs, made parties to this proceeding, are not concerned in the result, except that if these deeds are set aside they will be entitled to share in the partition of the land. The title of all the land thus conveyed was in Belinda Slaughter. This action as originally instituted after the death of Joseph and Belinda Slaughter was for the partition

of the land conveyed to Solomon Slaughter among his heirs, subject to the payment of $3,000 to the children of Scott Slaughter as provided in the conveyance. The heirs of Joseph and Belinda Slaughter, being made parties defendant, resisted the partition asked, on the ground that the conveyance to Solomon Slaughter was invalid, as made without mental capacity and under undue influence. By cross-petition and petition of intervention similar issues were raised with reference to other land conveyed at the same time by Joseph and Belinda Slaughter to Taylor Slaughter, subject to a life estate to the grantors, and with the charge of the payment on the termination of the life estate of $3,000 to Mary Blanford. In the original cross-bill and petition of intervention Mary Blanford and Scott Slaughter asked by way of alternative relief that they be decreed to have an equitable mortgage on the two tracts of land respectively for the payment of $3,000 to each of them, in addition to any amounts named in said alleged deeds. Subsequently each of said appellants filed claims against the estates of Taylor Slaughter and Solomon Slaughter for the payment of $3,000 to each under an alleged family settlement, in which it had been agreed by Solomon Slaughter and Taylor Slaughter that each of the appellants should receive that amount on the termination of the life estates reserved to Joseph and Belinda Slaughter under said deeds, or at the expiration of a year thereafter. The administrators of the estates thereupon intervened in the partition proceeding, and asked that all the rights of the parties be determined in the proceeding and on motion of said administrators the claims of Mary Blanford and Scott Slaughter against said estates were consolidated with the partition proceedings. The administration on the estate of Solomon Slaughter in Jasper county was ancillary, his estate having already been fully settled in a probate proceeding in Nebraska, of which State he was a resident at the time of his death. There are two branches of the case, therefore, the one involving the validity of the deeds of Solo-

mon and Taylor Slaughter, the other involving the validity of the claims of Mary Blanford and Scott Slaughter against the estates of Solomon and Taylor Slaughter for the payment of $3,000 to each, outside of the provisions in the deeds in behalf of Mary Blanford and the children of Scott Slaughter.

I.    Although undue influence is alleged as a ground of attack on the deeds, there is scarcely a scintilla of evidence that any influence was exerted on the grantors with reference

1. CONVEYANCES: undue influence. to their execution.    Solomon Slaughter, the grantee in the first, was a nonresident, and had no knowledge that the deed was being made until after it was executed and recorded.    Taylor Slaughter, the grantee in the other deed, was perhaps at the time of the making of the deeds the tenant of a portion of the home farm, although it does not appear that he resided thereon.    There was some showing that Taylor was frequently consulted by his father about his business affairs, and that in selling the produce from his father's farm he sometimes took checks in his own name so that he might receive the money without waiting until his father should indorse such checks or present them at the bank in person.    But there is no evidence that Taylor Slaughter drew the deeds or had any knowledge of their execution until after they were recorded, nor that he had anything to do by way of advice or otherwise with the conception or execution of the plan in accordance with which his parents attempted to dispose of their property.    The mere suspicion that, because he had the opportunity to advise his parents, and the disposition was to some extent in his favor, he suggested or procured the making of the deeds, is not enough to warrant a conclusion of undue influence. *Johnson v. Johnson,* 134 Iowa, 33; *Altig v. Altig,* 137 Iowa, 420; *Mallow v. Walker,* 115 Iowa, 238.

The evidence as to mental capacity shows that when the deeds were executed in 1893 Joseph and Belinda Slaughter were both over seventy-five years of age and of infirm health.

Both were crippled with rheumatism, and he was troubled

**2. SAME: mental incapacity.** with an affection of the kidneys, and had given up the management of his large farm, retaining only a small tract of land on which the two still continued to keep a little stock.    There is evidence that each had before death become somewhat childish, peevish, and eccentric; but each lived more than ten years after the execution of the deeds, and the witnesses who testify to declining powers refer more particularly to the last few years of the lives of these old people, and there is practically no evidence that when the deeds were made they had lost their mental capacity.    We have so often considered cases in which similar evidence has been involved that it is unnecessary now to say more than that mere impairment of physical powers by age and the incident loss of mental vigor are not enough to show incapacity to direct the business of determining the disposition of property among one's children. The facts are not unlike those involved in the cases of *Altig v. Altig,* 137 Iowa, 420; and *In re Stufflebeam's Will,* 135 Iowa, 338, in which such impairment of mental vigor was held not to be sufficient to show want of mental capacity as to the disposition of property.    The trial court properly held that there was not such showing as to justify, much less require, the setting aside of the deeds.

II.    The testimony as to a so-called family settlement by which Solomon Slaughter agreed to pay $3,000 to his brother Scott Slaughter in addition to the sum of $3,000

**3. FAMILY SETTLE-MENT: consideration: statute of frauds.** which by the terms of the deed was to be paid by him to the children of Scott Slaughter on the termination of the life estate reserved in the deed to the grantors, and Taylor Slaughter was to pay to Mary Blanford the sum of $3,000 in addition to the sum which under the terms of the deed to him was to be paid to her on the like event, is extremely uncertain and indefinite.    It consists almost entirely of the testimony of Mrs. Blanford and her husband and son and

Scott Slaughter with reference to declarations made to them or in their presence by Solomon Slaughter and Taylor Slaughter. Without discussing the competency of this evidence, it is enough to say that it all seems to refer to some prior arrangement, when or where made is not disclosed, the terms of which are wholly indefinite. If, as the testimony of some of the witnesses would seem to indicate, these sums were to be payable at the expiration of one year after the death of Joseph and Belinda Slaughter, both of whom were then living, the agreement was not provable by parol evidence, because not to be performed within one year. Such contracts on the part of Solomon and Taylor separately agreeing to pay these sums were without consideration, unless Mary Blanford and Scott Slaughter agreed in return to postpone or abandon or relinquish some proceedings or rights which they had or claimed to attack the deeds. No such agreement on their part is indicated by any of the witnesses. If there was a joint agreement in the nature of a family settlement, then to be supported by a consideration it must have been assented to by each of the parties thereto in reliance on some assent by the others. But no such common agreement is shown. We are unable to find anything in the record which goes further than to indicate an intention on the part of Solomon and Taylor, both of whom were dead before these claims were made, to contribute $3,000 each, respectively, to Mary Blanford and Scott Slaughter, by way of equalization of the benefits received from their common parents; but mere declarations of intention, no matter how clearly proven, would not give rise to binding obligations. The appellants themselves have not been consistent in their claims. They first asserted in the partition proceeding an equitable mortgage or lien upon the land. In their claims against the estates afterwards filed they relied upon oral contracts made immediately after the execution of the deeds as a result of dissatisfaction in regard to the disposition of their parents' property that, if proceedings to set aside such

deeds should be abandoned, Solomon and Taylor would respectively pay them $3,000 to avoid trouble and litigation. But until the death of their parents they were not competent to institute such proceedings, having no rights save as prospective heirs. . If appellants agreed in consideration of $3,000 to be paid to each that they would not contest the deeds, their agreements have not been carried out on their part, for the contest has been made as though no such agreement had been entered into.

No court of equity or law would feel justified on this kind of evidence in establishing agreements against the estates of deceased persons. See *Holmes v. Connable,* 111 Iowa, 298. " Even if such a contract may

4. FAMILY SETTLE-
MENT: suffi-
ciency of
proof.

be enforced, it can only be when it is clearly proved by direct and positive testimony, and when its terms are definite and certain." *Wallace v. Rappleye,* 103 Ill. 223. In view of the fact that not only Joseph and Belinda Slaughter, who are claimed to have been parties to the family settlement, but also Solomon and Taylor, who are sought to be charged thereunder, are dead, and that the testimony for appellants relates exclusively to declarations made by them, we are justified in scanning carefully the testimony with reference to such declarations, and we find it to be wholly insufficient to sustain the agreements against the estates.

III.   It is contended for appellants that error was committed by the trial court in consolidating the claims against the estates of Solomon and Taylor Slaughter with the equitable action for partition and in refusing a

5. WAIVER OF JURY
TRIAL.

jury trial as to such claims. But the appellants themselves had set up their claims in the partition proceedings before filing them against the respective estates. Having thus voluntarily come into a court of equity with their claims, they cannot complain that they were deprived of trial by jury. The court of equity was competent, at least in the absence of any objection, to determine the rights

of appellants.  All the parties necessary for the determination of their rights were before the court, and no reason appears why the equity court could not proceed as it did to finally dispose of the entire litigation.  Under such circumstances there was no error in making the consolidation and trying the issues without a jury.  *Twogood v. Allee,* 125 Iowa, 59 ; *Clinton v. Shugart,* 126 Iowa, 179.  Even if a jury trial had been granted to the appellants on their claims, there was no evidence such as would have supported a verdict in their favor, and no prejudice has resulted to them from refusing such jury trial.

The decree of the trial court was right under the record, and it is *affirmed.*