SCOTT v. S. H. KRESS & CO.
(No. 8505.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 20, 1917. Rehearing Denied Feb. 10, 1917.)

VENDOR AND PURCHASER &27;28—CONSTRUCTION OF CONTRACT—ERECTION OF BUILDING —"INTENTION"—"PROMISE."

Where a vendor waived the requirement of his written offer of sale that the purchaser should erect a building on the property, and the purchaser in letters coming to the vendor's knowledge stated that they purchased without any building condition, and that, while they intended to build, they did not mean to covenant to do so, there was nothing more than an expressed intention to build, and not a promise, the nonperformance of which would give the vendor a cause of action for damages; an "intention" being but the purpose a man forms in his own mind, which may begin and end with the person forming it, while a "promise" is an expressed undertaking or agreement to carry the purpose into effect, which, if supported by a good consideration, can only be rescinded by act of both parties; a declaration, verbal or written, made by one to another for a consideration, by which the promisor binds himself to do, or not to do, some act, and gives to the promisee a legal right to demand and enforce fulfillment (citing Words and Phrases, First and Second Series, Intention; Promise).

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 18, 19, 22; Dec. Dig. &27;28.]

Appeal from District Court, Cooke County; C. F. Spencer, Judge.

Suit by O. F. Scott against S. H. Kress & Co. Judgment for defendant, and plaintiff appeals. Affirmed.

Davis & Davis, of Gainesville, for appellant. Garnett & Garnett, of Gainesville, for appellee.

BUCK, J. On December 15, 1910, appellant, O. F. Scott, after some negotiations with one West representing S. H. Kress & Co., a Texas and New York corporation, offered, in writing, to sell to said Kress & Co. for $12,800, clear of taxes, except for the year 1911, 50x96 feet of land situated in the southeast corner of block No. 3 in Gainesville, Tex. Among other things, said written offer contained the following:

"The purchaser agrees to erect not less than a two-story brick building on said property, and said building to be occupied by one of the Kress stores. Said building to cost about $20,000 (twenty thousand dollars)."

After considerable correspondence between Scott and Kress & Co., the latter represented by their attorneys in New York, said Scott agreed to waive his insistence that this stipulation as to the erection of a building by Kress & Co. should be put in the deed from him to it, and on February 20, 1911, Scott, by general warranty deed, conveyed to Kress & Co. said lot for $12,800 cash consideration. On October 1, 1913, Scott brought this suit against Kress & Co., alleging that, in addition to the consideration of $12,800 expressed in said deed, said Kress & Co. agreed to

erect upon the land purchased the character of building heretofore described, and that the enhancement of other property in the same block owned by plaintiff was one of the considerations moving to him to make said sale, and that said Kress & Co. had failed to build and establish a store upon said lot, though a reasonable time had elapsed since said sale in which to comply with its alleged promise to do so, and that plaintiff had suffered damages in the sum of $10,000, by reason of the loss of the enhancement of the value of his remaining property, which would have accrued to him had said building been erected and store established. Defendant denied the making of such promise, with reference to the erection of any such building, as would bind it, and alleged that any statements made with reference to the erection of a building on said lot were merely expressive of its intention and purpose, and did not constitute a promise or obligation on its part. That it was still its intention to erect said building when conditions would justify it. The cause was tried before a jury on special issues submitted, and resulted in a verdict and judgment for defendant. Plaintiff appeals.

Appellant has filed in this court a brief containing some 16 assignments of error; some attacking the findings of the jury upon certain special issues submitted, others complaining of alleged improper conduct on the part of appellee's attorneys in their argument to the jury, still others complaining of the ruling of the court as to the admission of certain testimony, but after carefully considering these assignments, and examining the authorities cited in support thereof, we have reached the conclusion that the trial court would have been justified, under the admitted facts, in peremptorily instructing a verdict for the defendant.

On January 23, 1911, Kress & Co. wired Scott, acknowledging the receipt of his written offer to sell his property, and stating that said offer was "accepted substantially as set forth in letter now writing." In the letter referred to, which was received by Scott, Kress & Co., through their attorneys, Holm, Whitlock & Scarff, stated, in part, as follows:

"Accepting your contract in this qualified way, it was intended that it should be accepted upon the following conditions, viz.:

"1. By reference to this contract, you will note that it contains a clause whereby the purchaser agrees to erect not less than a two-story brick building, on said property, said building to be occupied by one of their Kress stores, and to cost about $20,000.00.

"S. H. Kress & Co. is buying this property for the purpose of erecting a building to be occupied by one of their stores, and if the property is purchased, the building will be completed as soon as they can reach your town and complete the building, and the store will thereupon be opened. We want it understood, however, that this is not to be deemed a covenant that will run with the land. We would not want this agreement turned up at some future time, should client desire to sell this property, and the objection made upon the title for that reason.

"Client is acting in good faith, but we do not want any clause of that kind that will affect the title. It may be that the business center of the town may change and it may be desirable to sell this property and buy another piece of property. A number of contingencies may arise, making it desirable to dispose of the property in question, or to have it occupied for other purposes, and therefore we want it understood that this is simply a naked purchase and unburdened by any conditions. We give you, however, the assurance that the present intention of client is, as above set forth."

By letter of January 24, 1911, written to a third party who seems to have acted as an intermediary between the appellee and appellant, and which letter was submitted to Scott, Kress & Co. used the following language:

"We inclose you herewith a copy of a letter this day mailed to seller. Please ask him to show you his copy of the contract, and that will make the objections we raise clearer. You doubtless appreciate the force of our objections. We do not want to be tied down absolutely to the conditions set forth in the contract, involving the erection and occupation by client of the building for one of its stores. Client is acting in utmost good faith, is paying a high price for the property, and purposes to occupy same as set forth in the contract, but we do not want any clause of that kind running with the land in the nature of a cloud on the title as it may be in the future desirable that said property be disposed of or other changes made. The insertion of such a clause is extremely injudicious. Doubtless the seller will waive that point, and our acceptance of the contract is conditioned on such waiver. * * *

"New Agent. If this transaction goes through, we will require a new local agent to collect rents and represent us as an agent. Please recommend some good reliable real estate agent for that purpose. We usually pay five per cent. for the collection of rents."

On January 31, 1911, a letter was written by said intermediary to Kress & Co.'s attorneys of New York, containing, among other things, the following language:

"We have had a talk with Mr. O. F. Scott, in reference to his contemplated sale to S. H. Kress & Co. Mr. Scott claims that he is selling the property for something less than it is worth, because he thinks the sale enhances the value of other property in the same vicinity. He says he will not insist on any provision going into the deed requiring S. H. Kress & Co. to build on the lot or to run one of its stores there, but he wants some assurance that they will build upon the lot and at least establish one of their stores there. The truth is, the whole neighborhood is very anxious for S. H. Kress & Co. to build and open a store there."

On February 18th following, Kress & Co.'s attorneys replied:

"In reference to alley, client will waive that point. In reference to Kress building, we assume that our letter of January 23d–24th or 25th (date on our carbon is unreadable) to the seller, copy of which we sent you, will be sufficient assurance for him.

"We repeat that client buys the property in good faith and will erect a building thereon and will occupy same with one of its stores. As set forth in aforesaid letter, we do not want this to be deemed any sort of covenant or contract and seller must accept our assurance in good faith. As we are acting in good faith, Client, however, refuses to be bound thereby."

It was admitted in the trial of the case by plaintiff and his attorney that the former saw all of the letters written by Kress & Co., or its attorneys, and the replies thereto, with reference to the desired stipulation in the deed as to the erection of the building on the lot purchased, and that Scott was advised of the fact that Kress & Co. refused to purchase the lot, unless the vendor should waive this stipulation, but it was contended by plaintiff in the court below, and is urged by the appellant here, that the elimination of said stipulation from the deed was consented to by Scott in order to meet the objection of Kress & Co.'s attorneys that such a stipulation incorporated in the deed would constitute a covenant running with the land, and hamper the vendee in any subsequent transfer that it should see fit to make; that Scott understood and agreed that said covenant should not be included in the deed, but that he further understood that Kress & Co. had promised and obligated itself in writing to erect the building described within a reasonable time. That had it not been for this understanding on the vendor's part, he would not have sold the property at the price he did, which he asserts was much below the market price of said property at the time of the sale.

There is no claim by appellant that any binding promise was made by appellee to erect the building in question, unless it is contained in the letters written under its authority, and especially those excerpts of such letters herein above set out. There is no allegation in plaintiff's petition of fraud on the part of Kress & Co. in making the statements with reference to its intention to improve the property. It is simply a question of whether or not there was any written agreement to erect said building, and, if so, whether or not Kress & Co. had breached its contract so to do. We think the language used in the letter to appellant of January 23, 1911, to wit:

"It may be that the business center of the town may change, and it may be desirable to sell this property and buy another piece of property. A number of contingencies may arise making it desirable to dispose of the property in question and to have it occupied for other purposes, and, therefore, we want it understood that this is simply a naked purchase and unburdened by any conditions"

—plainly disavows the purpose and intention on the part of Kress & Co. to be bound by any conditions not expressed in the deed, and especially a refusal to obligate itself to improve the property purchased by establishing one of its stores thereon. This intention is reiterated in the letter of February 18, which closes with the words:

"We do not want this to be deemed any sort of covenant or contract, and seller must accept our assurance in good faith. As we are acting in good faith. Client, however, refuses to be bound thereby."

It is evident from these letters that appellee expressed its intention to improve the property purchased by erecting a building thereon, and it is equally clear that it specifically declined to promise to do so. As is said in Words and Phrases (1904) p. 5675:

"An intention is but the purpose a man forms in his own mind. A promise is an expressed undertaking or agreement to carry the purpose into effect. The intention may begin and end with the person who forms it; a promise supported by a good consideration, can only be rescinded by the act of both parties to it; for to make a binding promise there must be a promisee as well as a promisor. The expression of an intention to do a thing is not a promise to do it. * * * It is not easy to define the difference between a 'promise' and an 'expression of intention.' Perhaps it lies in this: That the latter is merely an evidence of the condition of the mind with respect to future action, which concerns only the individual entertaining it, and which no one has the right to require him to execute, while the former is intended to give some other person an assurance, which he will be expected to rely on, that the act will actually be done or refrained from."

A promise is a declaration which gives to a person to whom it is made a right to expect or claim the performance or nonperformance of some particular thing; or, differently expressed, a promise is a declaration, verbal or written, made by one person to another, for a good consideration, by which the promisor binds himself to do, or not to do, some act, and gives to the promisee a legal right to demand and enforce fulfillment.

We do not see how appellee could well have more definitely and positively disavowed its purpose or willingness to be bound to perform the stipulation which appellant desired to be included in the deed, but which he afterwards waived. Appellee did express its intention to erect the building within a reasonable time, and stated that such expression of intention was made in good faith, but the good faith of such statement at the time it was made has not been attacked by pleading or proof. See Graham Paper Co. v. Williams, 175 S. W. 803.

While, as we have heretofore stated, we have examined all of appellant's assignments, and, further, we find no reversible error presented, yet we have concluded that from the letters themselves, upon which plaintiff predicated his claim for damages, the jury would not have been justified in finding a verdict for plaintiff, nor in returning a verdict other than that returned. All assignments are overruled, and the judgment is affirmed.

Affirmed.