THE BROAD STREET NATIONAL BANK OF TRENTON, PLAINTIFF-RESPONDENT, v. FREDERIC COLLIER, DEFENDANT-APPELLANT.

Argued May 2, 1933—Decided December 29, 1933.

Before Brogan, Chief Justice, and Justices Trenchard and Heher.

For the appellant, *James J. McGoogan.*

For the respondent, *Wicoff & Lanning (Kenneth H. Lanning,* of counsel).

The opinion of the court was delivered by

Heher, J. Respondent brought this action to recover the amount due on a promissory note, in the sum of $1,625, made by Charles M. McDermott, and endorsed for his accommodation by defendant-appellant, Collier. The answer admitted the allegations of the complaint, but set up, as an affirmative defense, that this was a renewal note; that respondent-bank, before the maturity thereof, or of one of several prior renewals, agreed that a fund of approximately $10,000, in its hands, belonging to McDermott, "should be used by plaintiff in paying said note endorsed by defendant;" that respondent, in violation of the agreement, did not use said fund, or any part thereof, for the stipulated purpose, but applied it to its own use, and that, in the circumstances, appellant was released from his obligation as an endorser of the note. By counterclaim appellant alleged that respondent retained said sum of $1,625 for its own use, and that therefore it "holds money that, in equity and good conscience, it ought to pay over to" appellant, and judgment for that sum, with interest, was demanded.

A verdict for plaintiff was directed by the trial judge, and from the judgment entered thereon Collier appeals, alleging error in the action thus taken, and in the denial of his motion for a direction of a verdict in his favor on the counter-claim.

The holder of a real estate mortgage in the principal sum of $60,000 authorized McDermott, a real estate and mortgage broker, to effect a sale of the security, and agreed to pay him a commission of $10,000, if, through his efforts, a sale should result. McDermott urged Collier, who was obligated as endorser on several of his outstanding notes, to purchase the mortgage. Collier declined, and suggested that he "take it to a bank he owed the less money to." McDermott, acting

on that suggestion, began negotiations with the respondent-bank, which resulted in the sale of the mortgage to it for the full principal sum thereby secured. McDermott's indebtedness to the bank on promissory notes held by it, in addition to the note in suit, totaled approximately $8,000. This indebtedness was satisfied from the moneys due McDermott for services in effecting the sale of the mortgage. Other obligations of McDermott were liquidated, and the balance then remaining, $250, was paid to appellant. The bank insists that these moneys were actually turned over to McDermott, and disbursed by him. Appellant maintains that we must regard the substance and not the form of the transaction, and that the bank, in fact, disbursed the fund, and, in liquidating all of McDermott's obligations to it, except the one in suit, violated the agreement alleged.

But the evidence did not establish the agreement pleaded. Appellant's sole reliance, on this crucial phase of his case, is placed upon two letters. On October 8th, 1930, after respondent, it seems, had agreed to purchase the mortgage, he forwarded a letter to Mr. John V. B. Wicoff, one of its vice-presidents, and also its counsel, stating that, "as I advised Mr. Charles McDermott to take the mortgage to your institution in order to settle his indebtedness as well as my note endorsed there, I feel that I should be taken care of in this matter. * * * I have helped Charlie to the extent of about $12,000 and am now paying the interest for him for this amount, and so I feel that it is only fair to me to be given this break. I trust you will appreciate my position and take care of me." Mr. Wicoff replied: "I have your letter in re McDermott and shall be very glad to comply with your wishes."

The trial judge apparently ruled, and properly so, that there was no evidence tending to establish the agreement pleaded. The letters did not constitute an agreement between the parties. An offer, to constitute a contract, must be one which is intended of itself to create legal relations on acceptance. 6 R. C. L. 600. The agreement must purport to produce a legally binding result, or, to put it in another form, the intention of the parties must refer to legal relations. It

must contemplate the assumption of legal rights and duties. 13 *C. J.* 286. An offer is a statement by the offeror of what he will give in return for some promise or act of the offeree. As the offeror's statement necessarily looks to the future, it must always be promissory in terms. 1 *Williston on Contracts,* 30. An expression of desire or hope is not of itself an offer which will become a contract upon acceptance by the adversary party. *Banning Co.* v. *California,* 240 *U. S.* 142, 153; 36 *Sup. Ct.* 338; 60 *L. Ed.* 569; *Bolter* v. *Kozlowski,* 211 *Ill.* 79; 71 *N. E. Rep.* 858; *Murphy* v. *City of Yonkers,* 213 *N. Y.* 124; 107 *N. E. Rep.* 267; 1 *Page on Contracts,* § 78.

A declaration of intention to act in a certain way, which does not show that the party who makes such declaration promises to act in such way, or intends to incur a legal liability obliging him to act in such way, is not an offer which can be accepted so as to make a contract. If it is sought to make an offer which, on acceptance, can become a contract, the words or acts by which it is made must show intention to assume liability. 1 *Supp. Page on Contracts,* §§ 77, 79.

The offer and acceptance must have the characteristics of a binding bargain. Such was not the case here. Appellant, in the letter referred to, merely expressed the hope that his note would "be taken care of." He was seeking the aid and assistance of Mr. Wicoff, and the latter expressed a willingness to help, but it is evident that it was not in the mind of either party that their legal relations were to be affected by a binding contract. There is no suggestion in the proofs that the bank, by virtue of a contract with McDermott, or otherwise, had authority to disburse the fund without McDermott's consent. In fact, control of the fund passed to McDermott, and it was disbursed in accordance with his wishes.

Moreover, there was clearly no consideration to support the promise upon which appellant relies. The counter-claim states the consideration as the "services rendered to plaintiff by defendant in causing said fund to be placed in the hands of plaintiff and to be made available for the payment of said note and other obligations of said Charles M. McDermott then owing to plaintiff." The alleged services were concededly not

rendered at the request of respondent bank. The executed consideration for a promise is sufficient, if, induced by the request expressed by, or properly implied from, the promise, it be a benefit to the promisor or a detriment to the promisee. *Atlantic Pebble Co.* v. *Lehigh Valley Railroad Co.,* 89 *N. J. L.* 336, 342; *Holt* v. *United Security Life Insurance Co.,* 74 *Id.* 795; *Conover* v. *Stillwell,* 34 *Id.* 54. The requirement ordinarily stated for the sufficiency of consideration to support a promise is, in substance, a detriment incurred by the promisee, or a benefit received by the promisor *at the request of the promisor.* 1 *Williston on Contracts,* 195. Consideration, by its very definition, must be given in exchange for the promise, or at least in reliance upon the promise. Accordingly, something which has been given before the promise was made, and, therefore, without reference to it, cannot, properly speaking, be legal consideration. Generally, the doctrine that past consideration is no consideration is well recognized and universally enforced. This has been the law from a very early day. This rule has its exceptions, but none embraces the instant case. One of the classes of cases in which, under the early English law, a past consideration has been regarded as sufficient, comprises promises in consideration of some act previously done by the promisee *at the request of the promissor.* 1 *Williston on Contracts,* 317-320, 326. As was said by Mr. Justice Holmes, in *Wisconsin & M. R. Co.* v. *Powers,* 191 *U. S.* 379, 386; 24 *Sup. Ct.* 107; 48 *L. Ed.* 229, 231: "But the other elements are that the promise and the detriment are the conventional inducements each for the other. No matter what the actual motive may have been, by the express or implied terms of the supposed contract, the promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment, or that the detriment induces the promise, if the other half is wanting."

The "offer" and "acceptance" in the instant case did not constitute a contract, and it follows, therefore, that there was no error in the rulings complained of.

Judgment affirmed, with costs.