**In re HALE DESK CO.**
No. 279.

Circuit Court of Appeals, Second Circuit.
June 6, 1938.

Pliny W. Williamson, of New York City (John E. Walker, of New York City, of counsel), for appellant.

Feiring & Bernstein, of New York City (Michael Feiring and Barney Bernstein, both of New York City, of counsel), for trustee-appellee.

Before MANTON, L. HAND and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

On July 17, 1935, the bankrupt, Cobb-Macey Dohme, Inc., and appellant entered into a contract which provided that all the inventory assets of Cobb-Macey Dohme, Inc., would be delivered to the bankrupt on consignment for sale by it; that all such assets not sold by September 1, 1938 would be purchased by the bankrupt at inventory prices; that there would be transferred to the bankrupt all the stock, good will, franchises, corporate and trade names of Cobb-Macey Dohme, Inc., and that appellant would deliver to the bankrupt all the shares of stock of the corporation. Appellant agreed to furnish a list of the customers of his corporation to the bankrupt and to protect the bankrupt as to any and all claims against Cobb-Macey Dohme, Inc., and he guaranteed to the former the performance of the contract by the latter. Appellant agreed "not to engage directly or indirectly in the desk business or in any line of business similar to that conducted by the Hale Co. or the Dohme Co. so long as he is employed by the Hale Co. or within five years after the cessation of such employment." Under the contract, appellant was to have no voice in the management of either corporation and on notice from Hale Co. was to cease any unsatisfactory activity. Under the clause of the contract which gives rise to this claim, the bankrupt agreed, beginning September 1, 1935, to employ the appellant at $3,000 per year for five years, payable $250 monthly during his lifetime. Appellant was "not to be restricted as to time and hours in his employment with the Hale Co." There was no contractual obligation or provision for any service to be rendered by the appellant to the bankrupt. At all times prior to the filing of the petition in bankruptcy on July 14, 1936, the appellant performed his obligations under the contract. Appellant was furnished office space and was paid monthly through June, 1936, but not thereafter. He claimed $12,000 as due for the remainder of the time specified in the contract, namely, from and after June, 1936 up to September 1, 1940.

The claim was disallowed below on the ground that after the bankruptcy he was free to seek other employment, but failed to thus mitigate the damages. It is clear from the contract and from the testimony

in the record that the parties intended to eliminate the petitioner as a competitor for a period of five years during which the bankrupt stipulated payment of a consideration in terms of "employment" and "salary", but it was not intended that the appellant would render any services. He never did render any services to the bankrupt nor was he ever requested to do so. If he were expected to render services or to devote any time to the bankrupt, a provision to that effect would be found in the contract. It was intended to remove the corporation and the appellant from a competitive position and the consideration to be paid to the appellant was not for salary but rather for his agreement not to compete. Such a covenant, being ancillary to the sale of a business and not being in unreasonable or illegal restraint of trade, is valid. Restatement of Contracts, § 516.

 Section 4 of the contract provided that, in the event of default, appellant would be "entitled to the return of said shares of stock of the Dohme Co. and its corporate and trade name." Appellee argues that, because of this provision, appellant's sole remedy is the return of the stock and the corporate and trade name. This provision does not on its face purport to be exclusive and we can make it so only by construction. It is true, as appellee argues, that in some cases where a contract provided a remedy the courts held it to be exclusive of all others. See Norcross v. Wills, 198 N.Y. 336, 91 N.E. 803; McCready v. Lindenborn, 172 N.Y. 400, 65 N.E. 208; Mechanics' Bank v. City of New York, 164 App.Div. 128, 149 N.Y.S. 784; Read v. Fox, 119 App.Div. 366, 104 N.Y.S. 251. For example, in McCready v. Lindenborn, supra, a landlord brought an action against a tenant for breach of a lease and nonpayment of rent. The lease provided that in the event of default by the tenant "the party of the second part [the tenant] shall and will pay * * * as damages", the difference between the rent reserved and the rent obtainable. There the court did say, "When the parties by their contract provide for the consequences of a breach, lay down a rule to admeasure the damages, and agree when they are to be paid, the remedy thus provided must be exclusively followed." But whether the provision for damages in a contract should be treated as an exclusive remedy is to be determined by the intent of the parties as revealed in all the facts of the particu-

lar case. Hunt v. Detroit Sulphite Co., D. C.N.Y. 15 F.Supp. 698. Clause 4 herein is not exclusive. It would be unreasonable to construe it as such and return appellant the shell of a corporate organization which has ceased business after full publicity to the trade of so doing. With this must be considered the fact that under his contract the appellant was held to inactivity in his position in the trade during the period of his contract.

 Neither party has argued the question of the proper measure of damages. Mathematical computation shows that the claimant has arrived at his damages by multiplying the number of months the contract had to run after the last payment by $250. per month. This is improper. His correct measure is the value as of the date of the breach of contract of a promise to pay $250 per month over the remainder of the stipulated period.

Order reversed.