Vincent A. Ltjpiano, J.
Motion by defendants to dismiss the complaint for legal insufficiency, or the first cause of action on the same ground, for judgment on the pleadings and for other relief.
It is alleged in the complaint that plaintiff is a prominent author who at one time collaborated with the late Charles Fulton Oursler in the writing of certain stage plays and radio scripts on the life of Jesus Christ and events occurring in His time under the title, ‘ ‘ The Greatest Story Ever Told ’ \ After Mr. Oursler’s death, plaintiff apparently continued writing radio scripts in collaboration with the late Mrs. Grace Perkins Oursler, and also wrote, on his own, additional radio, motion picture and television plays, all on the same theme. It appears that these plays have been highly successful, have received numerous awards and were widely broadcast throughout the world.
While this thematic project was enjoying its radio popularity, the late Mr. Oursler wrote and caused to be published a book bearing the same title with the subtitle ‘ ‘ A Tale of the Greatest Life Ever Lived ”.
Some time in 1954, plaintiff, Mrs. Oursler, and the Charles Fulton Oursler estate entered into a written agreement with defendant Twentieth Century-Fox Film Corporation, giving the latter exclusive motion picture rights throughout the world in the book, plays, manuscripts of literary property bearing the generic title, “ The Greatest Story Ever Told ”. Mrs. Oursler has since deceased, and so interest in the property herein involved is shared by plaintiff and the two respective estates.
As an advance against future amounts due, $110,000 was paid to the property owners with the proviso that in the event the sellers are not in default in any representations, warranties or covenants under the agreement the advance was not repayable. *1037 The agreement also contained the following provision which is part of item Twelfth thereof: 1 ‘ Purchaser contemplates that preproduction work on a motion picture based on the Property should be commenced within one (1) year after the date hereof and that photography of such motion picture should be completed within five (5) years from the date hereof. It is expressly understood, however, that Purchaser shall have sole and complete control over the exercise of all rights acquired by Purchaser under this agreement, (including, without limitation, the production, distribution, advertising, exploitation, disposition and other dealings in and with motion pictures produced hereunder) and all matters and things in connection therewith shall be determined by or with the authority of Purchaser in its absolute and sole discretion.”
The failure of Twentieth Century-Fox to commence operations within the time hereinabove contemplated is the basis of the complaint herein. Plaintiff seeks rescission for wrongful procrastination of all operations contemplated by the agreement for the production and exploitation of a film based on the property, and damages for breach of contract. It should be noted that the estate interests have refused to join in the complaint and have been brought in, therefore, as parties defendant.
Defendants contend: (1) the cause of action for rescission is defective in that the Oursler interests, which they assert are inseverable with plaintiff’s, have not assented to, and in fact oppose, rescission, thus making total rescission impossible; (2) the same cause of action is defective because of plaintiff’s failure to allege tender or willingness to tender the $110,000 paid under the agreement; and (3) the entire complaint is defective because it appears on the face thereof and the pleadings that there has been no breach of contract since Twentieth Century-Fox is not contractually obligated to have produced the film within a stated time.
Considering these contentions in inverse order, a determination must be made as to whether the complaint validly alleges a breach of contract, or to phrase it differently, whether from the facts alleged in the pleadings it can be deduced that the defendant corporation could not be considered as a matter of law to have breached the agreement. In this aspect the primary signification of the word ‘ ‘ contemplates ’ ’ as used in the above-quoted provision of the contract is of utmost importance.
That “ contemplates ” can be utilized to convey the idea of intention has been judicially recognized (Read v. Fox, 119 App. Div. 366). “ 1 Contemplate ’ is a word of comprehensive meaning * * * it means ‘ to consider with a view of accom *1038 plishing; intend; plan’” (Brown v. Preston County Ct., 78 W. Va. 644, 649). Whatever other meanings the term may have, it has acquired acceptability as a word of “ intent ” to accomplish an end (Funk & Wagnalls New Standard Dictionary [1951 ed.]; Webster’s New International Dictionary [2d ed.]). Used in this sense, the term can connote a binding obligation, impervious to amplification under the parol evidence rule (Read v. Fox, supra; Newsome v. Brown, 157 S. W. 203 [Texas Civ. App.]). While in light of the circumstances present in this case, the court is unable to conclude with any reasonable degree of certainty that a binding obligation to complete the motion picture here involved within a certain time was intended, neither can it conclude that it was not. It may be, as defendants contend, that time was not of the essence, but this merely begs the question. Generally speaking, time is not of the essence, in agreements in which no serious prejudices can result from delay. However, we are dealing here with copyrighted literary property, protection as to which expires after a fixed term (U. S. Code, tit. 17, § 24). How, therefore, may it be said that the agreement provision in question which specifies fixed times was as a matter of law precative in effect and not binding? Gross failure to work a copyrighted property licensed to others for exploitation has been held sufficient ground for rescission since it destroys the essential object of the contract (Broadcast Music v. Taylor, 10 Misc 2d 9, 21; Matter of Waterson, Berlin & Snyder Co., 48 F. 2d 704, revg. 36 F. 2d 94). Thus, in view of the foregoing it cannot be concluded that the complaint grounded as it is on an alleged breach for failing to properly exploit the property is insufficient in law. Defendants’ arguments might possibly raise issues as to ambiguity of what was intended. They do not, however, conclusively establish that the contract could not have been breached.
The first cause of action incorporated in the complaint which seeks rescission of the agreement between the parties is also attacked by defendants for failure to allege tender or willingness to tender. Prior to 1946, failure to make such allegation was fatal to a complaint in rescission. However, since the enactment of section 112-g of the Civil Practice Act, it is no longer necessary that the complaint allege a restoration, or an offer of restoration, to the defendant of what plaintiff had obtained by virtue of the contract. The court may, however, make tender of restoration a condition of its judgment, “ and may otherwise in its judgment so adjust the equities between the parties that unjust enrichment is avoided” (4 Carmody-Wait, New York Practice, p. 294; Civ. Prac. Act, § 112-g).
*1039 Furthermore, it is provided in the agreement that the advance paid was not repayable so long as the 1 ‘ Seller is not in default in any representations, warranties or covenants under this agreement”. Under well-established principles, parties are allowed ‘ ‘ to regulate their loss and liability for themselves ’ ’ (Read v. Fox, supra, p. 368). Thus, without passing on the merits of the issue of tender, the above-quoted provision of the agreement would indicate that the property of tender in the instant case would be better handled by the trial court should plaintiff obtain judgment. Defendant’s contentions as to tender are, therefore, without merit.
Equally without merit are the contentions as to the indivisibility of the agreement which would serve to deny plaintiff his right to litigate his claim because his co-owners in the property not only refuse to join with him but actively oppose him.
The owners of the literary property involved herein are either collaborators in the literary effort or successors in interest to such collaborators. In the absence of contract to the contrary, collaborators are deemed tenants in common, each owning an individual interest (Silverman v. Sunrise Pictures Corp., 273 F. 909; Carter v. Bailey, 64 Me. 458; Copinger & James, Copyright [9th ed., 1958], p. 246; Amdur, Copyright Law and Practice [1936], p. 616). It is well settled that cotenants individually can deal with strangers just as freely as owners of property held individually. Each of them can bind himself and his individual interest in the property, and the several co-owners can, as was done in the instant case, act together and bind themselves and the common property by their contract (13 N. Y. Jur., Cotenancy, § 48).
That tenants in common disagree is not a rare occurrence. However, merely because they united in conveying rights to their property cannot bar pursuit by one of a remedy he feels he is entitled to solely because his co-owners do not agree with him. It would be more in accord with the interests of justice to permit one cotenant to proceed in an action affecting the property, especially if the other owners not joined with him as plaintiffs are brought in as parties defendant (see King v. Schwartz, 193 N. Y. S. 2d 947; Burdick v. Chesebrough, 94 App. Div. 532). “Where collaborators fall out, even though they will not unite as joint complainants, the one who feels himself aggrieved may sue and bring in his collaborators as parties defendant in order that their several rights may be stated ” (Wittenberg, Protection and Marketing of Literary Property [1937], p. 128). Such an enunciation finds.logical and necessary acceptance in the fact that if it were otherwise a co-owner of *1040 the copyrighted literary property, by withholding consent, could place the other at his mercy and thereby create an impasse and an indefinite suspension of the exercise and benefit, of valuable rights which could become stale and disused while the limited statutory period was running out. Thusly, equity intervenes timely and conscientiously to resolve the contractual rights of all the parties — even though an exclusive license has been granted by all the co-owners jointly — and, appropriately, whether the co-owners will be relegated to their status and powers in existence before the disputants contracted with respect to the literary property.
In view of the foregoing, that branch of the motion seeking dismissal of the complaint, the first cause of action in the complaint, and judgment on the pleadings is denied. That branch of the motion seeking to vacate or modify the notice of examination before trial of the corporate defendant is granted to the extent of modifying the same to permit examination by such officer or officers thereof as has or have knowledge of the facts; said examination to proceed at the place indicated in the notice served at a time to be agreed on between the parties. In the event the parties cannot agree, an order may be presented in which the court will fix the time and place.