**William PAPPAS, Receiver for Charles City College, Appellee,**

v.

**Carl HAUSER, Appellant.**

**No. 54945.**

Supreme Court of Iowa.

May 11, 1972.

Larson & Carr, Charles City, for appellant.

William Pappas, Mason City, and Boyd G. Hayes, Charles City, for appellee.

UHLENHOPP, Justice.

The governing issue here is whether an alleged subscription to a college was, or was not, intended to be obligatory.

A number of residents of Charles City, Iowa, became enthusiastic about founding a college of considerable size. They worked with Dr. Millard G. Roberts, who had experience in such matters. They employed professional fund-raisers, and in particular one Peter J. Bruno. They caused Charles City College to be incorporated and they put on a fund drive.

Until the college was in operation and tuition was collected, the only source of funds was pledges. The original pledge form stated, "It is my intention to contribute the sum of $_____ to the College Founders' Fund." The form also recited, "This is a statement of intention and expectation and shall not constitute a legal obligation and shall not be legally binding in any way."

Money was needed to build and equip the physical plant as well as to pay personnel. The college promoters discovered that they could not obtain credit on the original pledge form. After consideration, they redrafted the form by dropping the statement that the pledge was not a legal obligation and by making the form read thus:

I/we intend to subscribe to the College Founder's Fund the sum of

_____Dollars.

I intend to pay: [ ] Monthly [ ] Quarterly [ ] Semi-Annually [ ] Annually over 36 months beginning _____ or as follows: _____

Near the end of the fund drive and after the college had incurred indebtedness and was in operation, Peter J. Bruno approached defendant Carl F. Hauser for a pledge of $5,000. Eventually Bruno came down to $3,000. The redrafted pledge form was then in use. Before Hauser signed the pledge form, he and Bruno had a discussion about its meaning. Regarding that discussion, the parties before us stipulated at the trial of this action that Hauser's testimony was as follows:

I asked Mr. Bruno, what if I should die, have a financial reversal or the College should fail?

Mr. Bruno said, "this is only an intent and not binding and if anything like this should happen you just forget it."

Mr. Bruno said "well, this (referring to the pledge card) is only an intent and is not binding and if some of these things would happen to you just forget about it."

The parties also stipulated:

It is further stipulated and agreed by and between the parties to this action that the testimony of Carl F. Hauser quoted above may be taken by this Court to be true and relied upon accordingly.

After the discussion quoted, Hauser signed the pledge form. Herewith we set out a copy.

610

## COLLEGE FOUNDERS' FUND — CHARLES CITY EDUCATION, INC.
### CHARLES CITY, IOWA 50616

**610 KELLY STREET**

NAME Hauser, Carl Mr. and Mrs.

ADDRESS 900 Blunt

FOR OFFICE USE

Gift No. 82

R. 10/19/67

A.

Ex. P-1

Date 11-17-70

I/we intend to subscribe to the College Founder's Fund the sum of

Three Thousand and no/100 _____ Dollars.

I intend to pay: ☐ Monthly ☐ Quarterly ☐ Semi-Annually

☐ Annually over 36 months beginning December 1967

or as follows:

Name Carl T. Hauser

Address 900 Blunt St.

TOTAL PLEDGED $3,00

DOWN PAYMENT $ —

BALANCE $ 3,000.

**PLEDGES TO THE COLLEGE FOUNDERS' FUND ARE DEDUCTIBLE FOR TAX PURPOSES**

SOLICITOR P. J. Bruno

COMMITTEE Dev. Office

DATE OF ASSIGNMENT 10-19-67

LA57491

The college was in operation less than a year when it closed its doors for lack of funds. A receiver was appointed. The liabilities of the receivership exceed the assets by a substantial amount.

Hauser did not pay his pledge and the receiver commenced the present action against him to have the pledge declared obligatory. Subsequently, the receiver also asked for judgment on the pledge. The trial court held for the receiver and granted judgment. Hauser appealed to this court.

In their arguments, the parties invite us down several avenues of the law. Confining ourselves to the facts of the case, however, we find consideration of only two issues necessary. Is Hauser's pledge legally obligatory? Is Hauser estopped to deny legal liability on the pledge?

■ I. *Legally obligatory?* A subscription by which a person for a consideration *binds himself to pay* is a contract. 50 Am. Jur. Subscriptions § 18 at 790; 83 C.J.S. Subscriptions § 18 at 749–750. The first issue is whether Hauser "bound himself to pay." This issue involves the parol evidence rule.

Before we take up that rule, however, we consider the actual intention of the parties. The case is unusual in that the parties stipulate (1) what the testimony of Hauser is, (2) that such testimony may be taken as true, and (3) the court may rely on it accordingly.

The stipulated testimony of Hauser is that when he asked what would happen if he died, had a financial reversal, or the college failed, Bruno answered that the pledge was only a letter of intent and not binding and if anything like that happened "just forget it." This testimony indicates that the pledge was not intended to be obligatory.

The receiver is correct that Hauser also stated at trial at the time he signed the pledge he intended to pay. We have no doubt Hauser did intend to pay; the pledge says so. But that conclusion does not answer the question before us. The question is, was that intention to pay *to be obligatory?*

This is not one of those cases in which a writing is intended as a nullity or a sham. The problem here relates to the *meaning* of a writing which was intended to be effective. Without question the participants intended the pledge to be effective. But effective as what—as a legal obligation or as a nonobligatory declaration of what Hauser planned to do? That question is reached, and expressly answered, by the stipulated testimony that the pledge was not binding. And that stipulated testimony is supported by Hauser's further statement at trial that when he signed he intended to pay "under the conditions that I talked to Mr. Bruno." We think the pledge was intended not legally obligatory.

■ We think, too the intention that the pledge was not legally obligatory is established as a matter of law. This flows from the parties' further stipulation that the Hauser testimony "may be taken by this Court to be true and relied upon accordingly."

■■ When persons place their agreement in writing, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from the agreement. But when that rule is invoked by a party, two distinct steps must be taken. First, the meaning of the words that the parties used in the writing must be ascertained (interpretation), and then second, the court must apply that meaning to the writing. Hamilton v. Wosepka, 261 Iowa 299, 154 N.W.2d 164. The present case does not involve difficulty under the second step. Rather, it involves a legal problem under the first step—whether the Bruno-Hauser discussion can be considered in ascertaining the meaning of the pledge form. If that discussion can be considered in interpreting the pledge, then the case is at an end so far as recovery on the pledge

itself is concerned, for a legal obligation to pay was not actually contemplated even though the pledge was not intended as a nullity.

■ In interpreting a written agreement, the principle applied in this state, stemming from the Hamilton case, is stated thus in Union Trust & Savings Bank v. State Bank, 170 N.W.2d 674, 677 (Iowa):

> [F]or the purpose of discovering the intention of both parties to a contract extrinsic evidence is admissible which throws light on the situation of the parties, the antecedent negotiations, the attending circumstances and the objects they were thereby striving to attain.

■ We think the pledge form before us is not clear and certain in meaning. Thus use of the Bruno-Hauser conversation is also permissible.

Three possible pledge forms may be considered. The first one is the original pledge. That form was clear and certain that a legal obligation was not intended; the form so stated. The second possible form is on the other extreme. When the college promoters discovered they could not obtain credit on the original pledge form, they could have drafted a form which was clear and certain that a legal obligation was in fact intended: "I hereby subscribe" or "I promise to pay" or an expression of like import. But the promoters did not adopt such a form. Instead, they took a middle course and drafted a third possible form: "I/we intend to subscribe" and "I intend to pay [] Monthly," etc. What does "intend" mean?

Courts do not give one invariable meaning to "intend" or "intention." Those words are used in various senses, depending on the parties' meaning when using them. 1 Corbin, Contracts, § 15 at 32–35, § 34 at 136–138 (1963). "Intention" was used by this court in a nonobligatory sense in Slaughter v. McManigal, 138 Iowa 643, 648, 116 N.W. 726, 728–729:

We are unable to find anything in the record which goes further than to indicate an intention on the part of Solomon and Taylor, both of whom were dead before these claims were made, to contribute $3,000 each, respectively, to Mary Blanford and Scott Slaughter, by way of equalization of the benefits received from their common parents; but mere declarations of intention, no matter how clearly proven, would not give rise to binding obligations.

Other authorities dealing with "intend" or "intention" are In re McKeon's Estate, 227 Iowa 1050, 289 N.W. 915; Congower v. Equitable Mutual Life & Endowment Association, 94 Iowa 499, 63 N.W. 192; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 64 F.2d 224 (8th Cir.) ("intention" used in contractual sense—business setting); Peters v. Bower, 63 So.2d 629 (Fla.) (not contractual under the circumstances); Phoenix Spring Beverage Co. v. Harvard Brewing Co., 312 Mass. 501, 45 N.E.2d 473; Oakes v. Mitchell, 15 Me. 360; Carlson v. Krantz, 172 Minn. 242, 247, 214 N.W. 928, 930 ("care should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action"); Stewart v. Reckless, 24 N.J.L. 427, 430 ("The expression of an *intention* to do a thing, is not a *promise* to do it."); Holt v. Akarman, 84 N.J.L. 371, 86 A. 408; Broad Street National Bank of Trenton v. Collier, 112 N.J.L. 41, 44, 169 A. 552, 554 ("A declaration of intention to act in a certain way, which does not show that the party who makes such declaration promises to act in such way, or intends to incur a legal liability obliging him to act in such way, is not an offer which can be accepted so as to make a contract."); Read v. Fox, 119 App. Div. 366, 104 N.Y.S. 251; Denker v. Twentieth Century-Fox Film Corp., 26 Misc.2d 1035, 210 N.Y.S.2d 241; State ex rel. Board of Education of Worthington Exempted School Dist. v. Board of Education of Columbus City School Dist., 172 Ohio St. 237, 175 N.E.2d 91; Newsome v. Brown, 157 S.W. 203 (Tex.Civ.App.); Graham Paper

Co. v. Williams, 175 S.W. 803 (Tex.Civ. App.); Scott v. S. H. Kress & Co., 191 S.W. 714, 716 (Tex.Civ.App.) ("The expression of an intention to do a thing is not a promise to do it."); Meissner v. Simpson Timber Co., 69 Wash.2d 949, 421 P.2d 674; Restatement, Contracts, § 2, Comment c ("A promise must be distinguished from a statement of intention"); 1 Corbin, Contracts § 15 at 35 (1963) ("A person may express his intention to do something in the future without promising to do it."); 17 Am.Jur.2d Contracts § 31 at 368 ("a mere expression of intention . . . does not amount to an offer"); 17 C.J.S. Contracts § 1(1)b at 540–541 ("the mere expression of an intention or desire is not a 'promise'").

We need not say in the present case what the result would be if the pledge form stood alone—whether we would hold it obligatory on nonobligatory. But we hold its language to be sufficiently uncertain to permit consideration of evidence, not only of the surrounding circumstances as in every case but also of the prior and contemporaneous oral declarations of the participants as to what they thought the language meant. See Colgin v. Henley, 6 Leigh 85 (Va.). With those oral declarations considered, we hold the pledge to be nonobligatory.

II. *Estoppel?* The receiver claims that since the pledges facially expressed an intent to subscribe and pay, when the college expended funds and incurred liabilities in reliance on such statements of intent the pledgors became estopped to deny liability. See 50 Am.Jur. Subscriptions § 11 at 784–785; 83 C.J.S. Subscriptions § 5(2) at 736–738.

We consider only one aspect of this claim. Estoppel presupposes lack of knowledge on the part of the one seeking to apply the doctrine. 28 Am.Jur.2d Estoppel & Waiver § 76 at 710–711, § 79 at 719, § 80 at 720; 31 C.J.S. Estoppel § 67a-(1) at 402. In this case the college did not simply have a pledge expressing an

intent to pay. We do not decide whether estoppel would then apply. In this case the pledgor was assured orally by the college's own representative that the pledge was not binding. The college cannot claim lack of knowledge of that assurance. No issue exists as to Bruno's authority to represent the college or to make the oral declarations. Bruno knew of his own declarations that the pledge was not binding, and what he knew the college knew. Restatement, Agency 2d § 9(3). No estoppel arose in favor of the college.

An estoppel did not arise in this case in favor of the creditors, in any event. Hauser's pledge was not assigned to them, nor did they extend credit on the strength of it. 28 Am.Jur.2d Estoppel & Waiver §§ 77, 78 at 712–718; 31 C.J.S. Estoppel § 72b at 442.

We conclude that the pledge is not obligatory and that Hauser is not estopped to deny liability.

Reversed.

All Justices concur except LeGRAND, REYNOLDSON and HARRIS, JJ., who concur in result, and McCORMICK, J., who takes no part.

LeGRAND, Justice (concurring specially).

I concur in the result but would not rest the opinion on the admissibility of representations made by Peter Bruno to the appellant, a matter the majority finds is of prime importance.

I adopt the principle which the majority opinion quotes from Union Trust & Savings Bank v. State Bank, 170 N.W.2d 674, 677. Having done so and having considered the "extrinsic evidence is admissible which throws light on the situation of the parties, the antecedent negotiations, the attending circumstances and the objects they were thereby striving to attain," I find nothing left requiring interpretation of the language used. It is clear, certain, and unambiguous that no legally binding obliga-

**614**

tion was created—or intended. I would so hold without resort to the statements made by plaintiff's fund raiser at the time the pledge was signed.

REYNOLDSON and HARRIS, JJ., join in this special concurrence.